No. 7210. December 23, 1944.)

ROYCE HERMAN, Employee, Appellant, v. SUNSET MERCANTILE CO., Employer, and FIREMAN'S FUND INDEMNITY CO., Surety, Respondents.

[154 Pac. (2d) 487.]
Rehearing denied January 15, 1945.

Frank L. Benson for appellant.

H. J. Hull for respondents.

DUNLAP, J.—On August 31, 1942, appellant, a minor of the age of 16 years, suffered a compensible injury while in the employ of respondent Sunset Mercantile Co. At that time he was helping to bottle beer, capping and pasteurizing it. He also had other duties in connection with his employment there, among them "lifting kegs".

The Board found, in part, as follows:

"III. That on the said 31st day of August, 1942, the claimant, Royce Herman, received a personal injury caused by accident arising out of and in the course of his employment with the defendant, Sunset Mercantile Company, said accident resulting in a severe laceration of the ventral aspect of claimant's right arm just above the wrist; that immediately thereafter, claimant was treated by a physician. Pieces of glass were extracted from the wound, and clamps put on to stop the bleeding, after which the wound was bandaged and claimant was permitted to return to his home.

"IV. That following said accident, the lacerated area remained extremely tender and the healing process unsatisfactory; that on the 28th day of November, 1942, under a general anesthetic, the partially severed nerves in claimant's arm were sutured and the arm placed in a cast; that on January 30, 1943, the cast was removed and the arm placed in a sling for a few days until claimant could commence moving the arm.

"V. That the only evidence tending to show the period of total temporary disability is the testimony of the claimant. He testified his attending physician released him for light work on the 15th day of February, 1943. He also testified that he probably could have performed his regular work during the month of April. From such testimony and giving due consideration to the period of time claimant's arm was in a cast and later in a sling, it is hereby found that claimant was surgically healed of his injury on the 1st day of April, 1943, and that his total temporary disability ceased at that time; that in view of the stipulation entered into by and between the parties hereto it is unnecessary at this time to make a finding on the amount of permanent disability which claimant now has.

"VI. That during the twelve-month period prior to the 31st day of August, 1942, claimant had not worked substantially every week; that he had worked only a short time for the defendant, Sunset Mercantile Company; that the average weekly earnings of a regular employee employed by said defendant doing the same class of work which claimant was doing, was $35.00.

"VIII. That during the regular school term of 1941-1942 claimant attended school; that he had planned to return to school when it opened for the fall term in September; that following said accident claimant did resume his schooling in September, 1942; and continued thereat during the full term which ended the latter part of May, 1942. (1943.)

"IX. That by reason of said accident, claimant was totally temporarily disabled for work from and including the 31st day of August, 1942, to the 1st day of April, 1943; that on the last mentioned date all claimant's total temporary disability for work ceased."

Based on the above findings, appellant was awarded compensation at the rate of $12 per week from and including the 31st day of August, 1942 to the first day of April, 1943, a period of 30 weeks and 3 days, amounting to the sum of $365.13.

Appellant has appealed from the award, and has alleged several assignments of error.

As we understand appellant's position, his objection to

the award, as stated in his reply brief, is to the effect, "that the decision of the Board should be modified, and the Board should be directed to allow appellant compensation under sec. 43-1112, I.C.A., subsequent to April 1st, 1943, for the balance of the period of 150 weeks."

Sec. 43-1112, I.C.A., as amended by chap. 241, 1937 Session Laws, reads, "Partial Temporary Disability.—Where the injury causes partial temporary disability for work, the employer during such disability and for a period not exceeding 150 weeks, shall pay the injured workman a weekly compensation equal to 55% of the difference between his average weekly wages before the accident, and the weekly wages he is able to earn thereafter, but not more than the weekly compensation provided in section 43-1110. In no case shall the weekly payments continue after the disability ends, and in case the partial temporary disability begins after a period of total disability, the period of total disability shall be deducted from such total period of 150 weeks."

Pursuant to stipulation of the parties, the question of permanent partial disability, if any, was withdrawn from the consideration of the Board.

An examination of appellant's amended petition for hearing discloses that appellant made no claim therein for partial temporary disability. However, under our practice in compensation cases, failure to specifically plead partial temporary disability is not fatal to a recovery therefor, if the evidence before the board warrants such recovery.

In the case of *Zapantis v. Central Idaho Min. & Mill. Co., et al.*, 64 Ida. 498, 136 P. (2d) 154, we said: "In compensation cases the theory upon which a claimant proceeds is immaterial if the facts, as presented by the evidence, entitle claimant to relief, such relief will be granted. (*Goaslind v. City of Pocatello*, 61 Ida. 435, 102 P. (2d) 650.) In that case it was held where the facts entitled claimant to relief on some ground other than that upon which he proceeded, relief will be granted. In that case claimant proceeded on the theory that there had been an accident which contention was not sustained by the evidence, but held that the evidence entitled claimant to recovery under the occupational disease law."

As pointed out by respondents, appellant had previously planned to quit his work for the purpose of entering school at the beginning of the term in September, 1942. This he did, and continued in school until the end of the term in the latter part of May, 1943. About two weeks after the close of the school term he commenced employment as a driver of ore trucks over a mountainous road, operating first a one and one-half ton truck, and thereafter a five ton truck. In this employment he hauled ore from the Crystal Lead Mine, near Murray, Idaho, to the Hercules Mine, at Wallace, a distance of approximately forty miles, and he testified that he was physically able to handle this work about the last of April.

He continued in this work until September 30th, 1943, when he again resumed and continued his studies in the Wallace High School, until December 20th, 1943, when he joined the United States Navy. He completed his course of training at Farragut Naval Training Station between December 20th, 1943, and March 10th, 1944, as a seaman second class, and at the time of the hearing before the board (March 17th, 1944) he had received his assignment for active sea duty.

The attending physician, on February 18, 1943, reported him as able to do light work as of February 15th, 1943, and that it would be necessary for him to do the light work four to six weeks from February 15th.

Respondents suggest that "to argue that disability had not ceased, and that he (appellant) was partially disabled subsequent to April, 1943, under the circumstances above related, strains one's credulity."

It seems to us that this position is erroneous, and that the evidence above referred to and relied upon by the respondents as supporting their position, does not negative the theory of partial temporary disability, nor the evidence in the case, hereinafter referred to, which in our opinion would indicate that the question of partial temporary disability was before the Board.

While it is true, as pointed out by respondents, appellant did testify he was able to have resumed his work for the employer in April, 1943, yet nevertheless, in that connection he likewise testified, "there was a lot of work there

that I couldn't have done", for the reason that, "I just couldn't do it—like lifting kegs", and further, that he couldn't do that type of work at the time of the hearing (March 17, 1944) for the reason that "it would be too heavy".

Then, too, as appears by the record, there was before the board the medical reports in the case, also disclosing a physical condition indicating appellant's physical incapacity for the work which he was doing at the time of the accident, and which continued after April 1, 1943.

On April 19, 1943, the attending physician reported thus:

"There is some decrease in the atrophy in the interossei muscles. Motion of the fingers is greatly increased. Patient feels there is less numbness of the area supplied by the sensory distribution of the unlar nerve in the right hand."

And under date of June 9, 1943:

"The atrophy of the interossei muscles remains marked. Although there is some improvement of the motion of the fingers, abduction and adduction of them is very poor. The grip of the affected hand is decidedly weaker than the left hand. I do not feel the operation of November 28, 1942 has resulted in regeneration of the unlar nerve. Because of the presence of such a large neuroma at the time of the operation and the necessary shortening of the unlar nerve due to its removal, I feel it is impossible for further surgery to benefit this patient."

And on July 31, 1943, in part as follows:

"Patient was recently examined by Dr. Joseph Lynch, neuro-surgeon of Spokane, Washington. Dr. Lynch feels there is considerable improvement in the condition of the hand since the nerve suture. Dr. Lynch feels that at least 12 months should elapse from the time of the nerve suture operation before making a final report on this patient."

The evidence further shows that while appellant only worked for a period of 16 weeks after the termination of total temporary disability, his earnings during that period was only $32.00 a week, whereas it had been $35.00 before the accident.

This evidence raised the issue of partial temporary disability, and the board should have determined whether or not there was a loss of earning capacity, following April 1, 1943, even though appellant failed to submit evidence as to the amount of compensation to which he was entitled. (*Feuling v. Farmers Co-Op. Ditch Co.*, 54 Ida. 326, 31 P. (2d) 683.)

We cannot agree with appellant's contention that as the record now stands he is entitled to an award of $12.00 per week from April 1, 1943 to continue for a period of 150 weeks from the date of the accident.

Under our compensation law, compensation is based upon loss of capacity to earn. This loss is measured by what a workman of the same class and grade could earn in the employment in which he was, under the conditions prevailing therein, before and up to the time of the accident. (*Flynn v. Carson*, 42 Ida. 141, 243 P. 818.) In the case of *Kelley v. Prouty*, 54 Ida. 225, 30 P. (2d) 769, speaking of the Act, we said: "But the general theory and spirit of the act, except for the specific indemnities set forth in sec. 43-1113, is to the effect that compensation is provided to make good the loss of the earning power or capacity to work on account of the injury. In other words, our compensation act is to the same effect as the laws of those states holding, as indicated in the above cited cases, that compensation is to be paid on account of disability or impairment of ability to work, or for loss of earning power, and not as indemnity for the loss of a member or physical impairment as such, except the indemnities specified in sec. 43-1113."

In view of the evidence hereinbefore referred to, which was before the Board at the hearing, and which disclosed appellant's subsequent physical impairment for performance of the work in which he was engaged at the time of the injury, and which impairment was due to the injury, the board should have taken evidence to determine whether or not this condition resulted in a loss of earnings, and if so the appellant is entitled to a weekly compensation equal to 55% of the difference between his average weekly wages before the accident, and the weekly wages he was able to earn thereafter, for the period of time and as con-

templated by sec. 43-1112, I.C.A., as amended, supra, and this cause is remanded to the Board for said purpose.

Costs to appellant.

Holden, C.J., Ailshie, Budge and Givens, JJ., concur.