649 P.2d 1214

Ronald W. BALDNER, Claimant-Respondent,

v.

BENNETT'S, INC., Employer, and State Insurance Fund, Surety, Defendants-Appellants.

No. 13756.

Supreme Court of Idaho.

Aug. 18, 1982.

---

Paul S. Boyd, Boise, for defendants-appellants.

William L. Mauk, Boise, for claimant-respondent.

SHEPARD, Justice.

This is an appeal by an employer and its surety from an order of the Industrial Commission awarding the claimant disability benefits upon the basis of a permanent partial disability equal to 44% as compared to the whole man. We affirm.

The facts are not in dispute. The claimant-respondent Baldner became a journeyman ironworker in 1964, and worked continuously in that trade until August, 1977. At that time, while he was employed by Bennett's, Inc., he suffered an injury to his lower back while he was unloading heavy materials. Although he thought the problem would subside, it persisted and a few days later, while he was working on a scaffold, he sustained additional injury to his lower back.

Baldner sought treatment from an orthopedic surgeon, who initially prescribed conservative treatment, but when the condition did not improve, a laminectomy and fusion at the L4–5 and L5–S1 levels of the lumbar spine were performed. By August 29, 1979, Baldner's condition had stabilized and he was released from medical care. As a result of the back injury and the surgery, Baldner's physical abilities are limited and he cannot perform the work of an ironworker.

The testimony indicated that prior to August, 1977, Baldner had a history of recurrent back problems. Dr. Johnson, the orthopedic surgeon diagnosed Baldner's condition as degenerative nerve disease with nerve impingement and arthritic changes in the joints in the posterior part of the back. He testified that Baldner's 1977 injury aggravated his pre-existing degenerative condition and that the accident combined with the preexisting condition precipitated the need for surgery. Dr. Johnson testified that Baldner's permanent partial impairment rating was equivalent to 15% of the whole man.

At the time of the injury, Baldner was 33 years old, had completed part of his freshman year of college and had completed courses such as welding and blueprint reading which would help him in his trade.

Prior to the 1977 injury, Baldner earned $24,421.20 per year from ironworking, and also held two part-time jobs, one as assistant business agent for the Ironworker's Union, from which he earned $3,600 per year, and another teaching the ironworker apprentice program at Boise State University, earning $1,800 per year. Thus his pre-injury annual income totalled $29,821.20. Since both part-time positions required the employee to be an active ironworker, Baldner could perform neither of those part-time jobs after the 1977 injury.

Following the stabilization of his condition, Baldner obtained employment teaching welding at Boise State University, earning $15,988.63 per year. He also earns an additional $720 per year for teaching a night course in blueprint reading thus bringing his total post-injury annual income to $16,708.63. To maintain his employment, Baldner must take teacher education courses, full-time during the summer and part-time during the school year. He intends to earn a bachelor's degree in education and work toward a master's degree.

Baldner and the surety, State Insurance Fund, were unable to agree upon permanent partial disability benefits, and Baldner petitioned the Industrial Commission for a hearing on that issue. Following hearing, the Commission found the permanent partial disability to be equivalent to 44% of the whole man by measuring that disability in terms of Baldner's decrease in wage earning capacity. The Commission found that defendants-respondents did not establish that Baldner could earn more than he was earning in his teaching positions at BSU and held that Baldner's wage earning capacity accurately reflected the decrease in his ability to engage in gainful employment resulting from the injury.

Defendants-appellants Bennett's, and its surety, the State Insurance Fund, first assert that the Commission erred by failing to apportion Baldner's disability between his pre-existing physical impairment and his 1977 injury in accordance with I.C. § 72–406. The record is clear that Baldner indeed suffered from pre-existing congenital degenerative disk disease and arthritic changes prior to the time of his injury in 1977. However, the record is totally void of any evidence probative of the percentage of Baldner's disability, if any, that should be attributed to his pre-existing condition. Further, the record reveals that neither the Commission nor the Referee considered apportionment of the disability to be at issue in the proceedings below. As framed by the parties, the major issue before the Commission involved the extent of Baldner's permanent partial disability. Baldner's application also requested additional retraining benefits and reasonable attorney's fees, but both of those issues were specifically resolved against Baldner and are not presented here on appeal. The answer of defendants-appellants framed the issues as:

"The primary issues currently in dispute are:

"(1) The degree of permanent partial impairment disability from which claimant is suffering as a result of this alleged accident.

"(2) If he has been found to be disabled, the amount of retraining, if any, due claimant, in addition to the amount heretofore furnished by Employer/Surety.

"(3) That if retraining is found to be available to Claimant under the terms and conditions of Section 72–450, I.C., that such period of retraining be fixed by the Commission, not to exceed 52 weeks, nor to exceed an additional period of 52 weeks, with credit for advances heretofore made by defendants."

The burden to raise the issue of apportionment is upon defendants-appellants and that failure to raise the issue before the Commission renders inappropriate any review by this Court. Issues not raised below and presented for the first time on appeal will not be considered or reviewed. *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968).

Defendants-appellants next argue that the Commission erred in determining the extent of Baldner's permanent, partial disability by utilizing the difference between Baldner's pre-injury and post-injury incomes. It is argued that I.C. § 72–425 requires the Commission to consider other factors such as claimant's age, sex, education, training, usable skills, together with the economic and social environment to determine the extent of a claimant's permanent disability, and that the Commission's failure to consider such factors require reversal. We disagree.

I.C. § 72–425 provides:

"Permanent disability evaluation.—'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by nonmedical factors, such as age, sex, education, economic and social environment, training and usable skills."

Permanent impairment rating is defined by I.C. § 72–424 as:

"Permanent impairment evaluation—'Evaluation (rating) of permanent impairment' is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members."

■ Here Baldner's permanent partial impairment rating was stated by Dr. Johnson to be equivalent to 15% of the whole man. A claimant's impairment evaluation or rating is one component or element to be considered by the Commission in determining a claimant's permanent, partial disability, I.C. § 72–425, and is not the exclusive factor determinative of the disability rating fixed by the Commission. I.C. § 72–427. A disability rating may exceed the claimant's impairment rating. *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 143 (1979); *Murray v. Hecla Mining Co.*, 98 Idaho 688, 571 P.2d 334 (1977).

I.C. § 72–423 defines permanent disability as:

"Permanent disability.—'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected."

*See also* I.C. §§ 72–102(8) and 72–425.

■ Our statutes thus make clear, as do our prior cases, that the primary purpose of an award of permanent partial disability benefits is to compensate the claimant for his loss of earning capacity or his reduced ability to engage in gainful activity. *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 142 (1979); *Herman v. Sunset Merc. Co.*, 66 Idaho 47, 154 P.2d 487 (1944); *Kelley v. Prouty*, 54 Idaho 225, 30 P.2d 769 (1934).

Here, after a detailed recitation of factual findings, the referee's opinion adopted by the Commission, stated:

"The claimant has . . . suffered a loss in earning capacity of $29,821.10 minus $16,708.63 or $13,112.57 per year, or 44% of his pre-injury wages. *Because the claimant's decrease in wage-earning capacity is equivalent to his decrease in ability to engage in gainful activity in this case*, the claimant has suffered a permanent partial disability equal to 44% of a whole man as a result of his back injury. [¶] *The Referee recognizes that this is an unusual case.* In most cases where a claimant is asserting that his permanent disability exceeds his permanent impairment, he attempts to prove that fact by presenting the testimony of a witness who is an expert in the area of employment. *Cf. Murray v. Hecla Mining Company*, 98 Idaho 688, 571 P.2d 334 (1977). However, the Workmen's Compensation Law does not require any particular method of proof. The claimant in this case established a loss of wage-earning capacity as a result of his injury and *the*

*Referee is convinced that both his pre-injury and post-injury wages accurately represent his ability to engage in gainful activity at the time those wages were earned.* Thus, despite the absence of expert testimony, the proof in this case established a loss of ability to engage in gainful activity in excess of the claimant's impairment rating." (Emphasis supplied.)

█ It is clear that the decision was reached upon the correct statutorily mandated basis of "ability to engage in gainful activity", I.C. § 72–425. We deem the instant case to be unusual in that the claimant, following his impairment and removal from the labor market as an ironworker, has educated and continues to educate, himself for the purpose of finding another line of gainful activity in the labor market. Hence, as stated by the Referee, claimant has demonstrated by actual results, rather than abstract theory, that he has in actuality sustained a decrease in ability to engage in gainful activity. There is no showing on the record that the decision was made without any consideration of factors other than the mathematical comparison of pre-injury and post-injury incomes. It only indicates that the income comparison result measured Baldner's loss of "ability to engage in gainful activity" accurately regardless, or in spite of, the other factors. We find no error of law, nor do we find the findings lack support in the evidence and hence the Commission's order will not be set aside. I.C. § 72–732.

Defendants-respondents finally assert that the Commission erred in its determination of Baldner's total annual pre-injury wages by including therein those earnings from part-time employment, *i.e.,* $5,400 which he earned as an assistant union business agent and from teaching an apprenticeship program. We disagree. I.C. § 72–102(26) provides:

" 'Wages' and 'wage earning capacity' prior to the injury or disablement from occupational disease means the employee's money payments for services as calculated under section 72–419, Idaho Code, and shall additionally include the reasonable market value of board, rent, housing, lodging, fuel, and other advantages which can be estimated in money which the employee receives from the employer as part of his remuneration, and gratuities received in the course of employment from others than the employer. 'Wages' shall not include sums which the employer has paid to the employee to cover any special expenses entailed on him by the nature of his employment."

█ Defendants-appellants assert that the monies earned by Baldner from such part-time employment are neither board, rent, housing, etc., nor a "gratuity". Such argument ignores the provisions of I.C. § 72–419(9) which provides:

"When the employee is working under concurrent contracts with two (2) or more employers and the defendant employer has knowledge of such employment prior to the injury, the employee's wages from all such employers shall be considered as if earned from the employer liable for compensation."

That statute clearly contemplates the inclusion of a claimant's earnings from part-time employment in calculating his preinjury wages or income. Here there is no contention that Bennett's was unaware of Baldner's two part-time positions. Hence, the earnings from those part-time positions were properly included by the Commission in its determination of Baldner's total pre-injury annual income.

The order of the Industrial Commission is affirmed. Costs to respondent.

McFADDEN and DONALDSON, JJ., concur.

BISTLINE, J., concurs in result.

BISTLINE, Justice, specially concurring.

In this case the Court rejects the employer-appellant's argument that the Commission failed to consider the nonmedical factors referred to in I.C. § 72–425 and affirms the Commission's decision awarding disability benefits based upon a permanent disability equal to 44% of the whole man,

despite the fact that Mr. Baldner's permanent partial impairment rating was 15% of the whole man. I concur in the result reached by the majority because I believe the income comparison procedure used by the Commission in reaching its decision in this case implicitly took into account the nonmedical factors to which I.C. § 72–425 refers. To my mind under the circumstances of this case, the fact that Baldner's post-accident employment paid less than what his employment prior to the industrial accident paid (and to some extent the fact that he found employment at all), reflects to some degree the nonmedical factors to which I.C. § 72–425 refers. Thus, under the unique circumstances of this case,[1] I believe the Commission acted properly in determining the percentage of permanent disability by comparing Baldner's income before and after the industrial accident. Somewhat troubling, however, is the reasoning the Court employs in its decision in this case:

"There is no showing on the record that the decision was made without any consideration of factors other than the mathematical comparison of pre-injury and post-injury incomes. It only indicates that the income comparison result measures Baldner's loss of 'ability to engage in gainful activity' accurately regardless or in spite of the other factors. We find no error of law, nor do we find the findings lack support in the evidence and hence the Commission's order will not be set aside."

The majority opinion might be read as adopting the rule that there is a presumption that such factors were considered. Such a presumption could be used to unduly burden an injured workman who appeals from a decision of the Commission, arguing that the Commission did not consider the appropriate nonmedical factors. Better, I think, that the Commission should establish

in its record that there was indeed a consideration of the nonmedical factors. *See Houser v. Southern Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 649 P.2d 1197, Supreme Court No. 13589 (Bistline, J., dissenting).

In *Houser,* the injured workman made the same argument that the employer in this case makes. The Court in *Houser* simply rejected the argument since it found that there was "no ... evidence in the record bearing on any disability above and beyond the physical impairment rating." I dissented in *Houser* because I could not agree that the record did not contain evidence sufficient to sustain a higher disability rating, and I went on to state:

"[I]t would be inappropriate to presume that the Commission considered the factors found in I.C. § 72–425 where no such consideration of the factors appears in the record. There is no way for a claimant who is denied compensation, or for this Court in reviewing on appeal such a denial, to on a bare record determine whether or not the Commission has complied with its statutory duty [to consider nonmedical factors in its determination of a claimant's permanent disability]."

I continue to adhere to the views I expressed in *Houser.* I believe that the Court inappropriately presumes that the Commission complied with its statutory mandate, and the chief concern is that such a presumption may be used to unduly burden an injured worker. It is difficult, if not impossible, to visualize a scenario which adequately depicts that the Commission did not consider nonmedical factors in its determination, if the absence of such factors or considerations in the record is not sufficient.

It is true that the Commission in this case considered Baldner's income before and af-

---

1. Both the referee, whose decision was adopted by the Commission, and the majority recognized that this is an unusual case. As the majority notes, "following his impairment and removal from the labor market as an ironworker, [the claimant] has educated and continues to educate, himself for the purpose of finding another line of gainful activity in the labor market." Furthermore, based upon the facts in this case, the referee specifically found that "both [Baldner's] pre-injury and post-injury wages accurately represent his ability to engage in gainful activity."

ter the industrial accident, and that such a consideration is certainly a "nonmedical" consideration. Implicit in the majority's opinion, however, is, that the pre-injury/post-injury income comparison procedure used by the referee is a sufficient consideration of nonmedical factors under I.C. § 72–425. I do not believe in every case, and perhaps not even in the ordinary case, that a mathematical comparison by the Commission of pre-injury and post-injury incomes will be sufficient to satisfy the statutory requirement that the Commission consider "nonmedical factors such as age, sex, education, economic and social environment" under I.C. § 72–425. While I do agree that such a comparison is some, and even strong, evidence of an injured worker's "ability to engage in gainful activity," I do not believe that in the ordinary case this is the only nonmedical evidence which should be considered by the Commission. I concur in the result in this case, only because under the specific circumstances of this case, I believe the procedure used by the Commission sufficiently took into account the nonmedical factors as well as comparable incomes.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur with that part of the majority opinion which concludes that there was adequate evidence to support the commission's finding of a 44% permanent partial disability rating for the claimant. I disagree, however, with the majority that the appellant did not adequately raise the issue of apportionment between that portion of his 44% permanent disability which was caused by the industrial accident and that caused by his pre-existing physical impairment. Therefore, I would reverse and remand this matter to the Industrial Commission to consider the apportionment question.

I.C. § 72–406 requires that if the claimant has a "pre-existing physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease." The medical testimony was replete, and very specific, concerning the nature of the claimant's pre-existing degenerative disk disease, including testimony concerning long periods of time which he had missed from work as a result of that pre-existing condition. The majority acknowledges that evidence by stating, "The record is clear that Baldner indeed suffered from pre-existing congenital degenerative disk disease and arthritic changes prior to the time of his injury in 1977." I.C. § 72–406 required the commission to apportion his present disability between the industrial accident and his pre-existing physical impairment.

Nevertheless, the majority refuses to require apportionment, asserting that appellant never raised the issue before the commission and raises the issue for the first time on appeal. As the majority itself points out, however, the answer filed by the defendant appellant asserted the first issue to be:

"1. The degree of permanent partial impairment/disability from which claimant is suffering *as a result of this alleged accident.*" (Emphasis added.)

Even if technical rules of pleadings were applicable to Industrial Commission proceedings, which they are not, that statement in the appellant's answer clearly raises the issue of apportionment. *See Thom v. Callahan,* 97 Idaho 151, 540 P.2d 1330 (1975); *Duggan v. Potlatch Forests, Inc.,* 92 Idaho 262, 441 P.2d 172 (1968); *Walker v. Hogue,* 67 Idaho 484, 185 P.2d 708 (1947).

I would reverse and remand this matter to the Industrial Commission to apportion claimant's disability between his pre-existing impairment and "the additional disability from the industrial injury. . . ."