680 P.2d 539

**Alfred Lee BENNETT,
Claimant-Appellant,**

v.

**CLARK HEREFORD RANCH, and Fireman's Fund Insurance Company,
Defendants-Respondents.**

No. 14429.

Supreme Court of Idaho.

April 19, 1984.

William McDougall, Boise, Emil Pike, Twin Falls, for claimant-appellant.

John W. Barrett, Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

BISTLINE, Justice.

Alfred Lee Bennett suffered a back injury on January 19, 1976, while working at Clark Hereford Ranch near Buhl, Idaho.

The surety, Fireman's Fund Insurance Company, thereafter voluntarily paid Mr. Bennett temporary total disability compensation for 51 weeks from the date of the accident until January 12, 1977, the date on which Mr. Bennett was released from ongoing care by Dr. Swartling, his orthopedic physician.[1] Dr. Swartling gave Mr. Bennett a 15 percent *medical impairment* rating. The surety thereafter voluntarily paid Mr. Bennett $6,187.50 for the 15 percent medical impairment. No compensation agreement was entered into between the parties.

On November 9, 1978, Mr. Bennett filed an application with the Industrial Commission requesting an award of permanent disability compensation pursuant to I.C. § 72–423.[2] The hearing before a referee was held on May 6, 1980. On September 11, 1981, the Commission approved the referee's decision denying Mr. Bennett's claim.

The following evidence was presented before the referee and was summarized in the referee's findings of fact, which were adopted by the Commission. On the date of the accident, Mr. Bennett was a married man with seven children ranging from the ages of three to nineteen. He was 43 years old having no formal education and being able to neither read nor write. During his lifetime, he had been engaged in three principle fields of employment—construction, general farm labor and truck driving. After his accident, he was no longer able to engage in construction or farm labor because of his difficulty in bending, stooping, twisting, remaining in any position for long periods of time or lifting heavy objects. Mr. Bennett, was, however, able to continue truck driving although he testified that he had trouble

---

1. Dr. Swartling testified that he released Mr. Bennett from ongoing care at this point "because it had been a year since injury and I was thinking the workmen's compensation people get nervous after about a year and they want something done one way or the other, a rating or operation or release or something ... He wasn't any better, he wasn't any worse at that point. At that point his condition was what they call surgically healed so I just rated him." R., pp. 39–40.

2. I.C. § 72–423 provides that permanent disability "results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected."

loading and unloading the trucks and that he often had to stop and rest his back.[3]

In the year prior to his accident, Mr. Bennett earned $4,000. After the accident, he remained unemployed for two and one-half years [4] until August of 1978. Mr. Bennett testified that he had looked for employment but "I couldn't get around very good. I have to see Dr. Swartling quite often and I was going to once but no one would give me a job." R., p. 62. Mr. Bennett testified that when he couldn't find a job he bought an old truck which he operated until December of 1978 when the engine blew up. The engine was replaced in January of 1979 and three days later it also blew up. The truck has remained impounded in Texas with a bill owing on it for $7,200. During the six months in 1978 in which Mr. Bennett worked as a self-employed truck driver he grossed $3,000. This figure does not take into consideration the $7,200 repair bill owing on the truck. In 1979, Mr. Bennett worked for five different employers; his earnings amounted to $2,000. In 1980, Mr. Bennett worked for two different employers; at the time of the hearing he had worked for two weeks at his last temporary job of hauling sand and gravel which paid $4.50 an hour for 10-hour work days five and one-half days a week. Mr. Bennett testified that that particular job would probably last the summer if he could stand the physical pain and discomfort occasioned in loading and unloading the truck, and in sitting for long periods of time on the road. R., p. 76.

In holding that Mr. Bennett had failed to establish entitlement to a disability award greater than his physical impairment rating, the referee wrote, with which two members of the Commission agreed:

"That burden of proof in a workmen's compensation case *is upon the Claimant to present expert opinion concerning the degree of disability.* In this case, the Referee concludes that Claimant has failed, by preponderance of the evidence, to prove that Claimant's present circumstances are related to his industrial accident of January 19, 1976. The medical opinions in this case indicate that Claimant is able to continue with his truck driving activities. The record reflects that Claimant has, in fact, been employed as a truck driver since his industrial accident, and that in fact his reason for discontinuing his truck driving as an independent truck driver was financial inability to have an engine repaired. At the time of the hearing, Claimant was in fact working as a truck driver in the State of Texas working 10 hours per day five to five and a half days per week.

"As such, Claimant has failed to sustain his burden of proof in establishing a disability greater than a 15% whole man permanent physical impairment award. All workmen's compensation benefits due Claimant as a result of the industrial accident have heretofore been paid by Defendant-Surety."

R., p. 70 (emphasis added).

Mr. Bennett's principle contention on appeal is that the Commission used the wrong legal standard in determining that he was not entitled to a disability award greater than his medical impairment rating. He argues that the test for determining whether a claimant has suffered permanent disability greater than medical impairment is not whether the claimant is able to return to work at some employment, but rather whether the physical impairment, taken in

---

3. Dr. Swartling testified in response to the question of what recommendations he would have with reference to Mr. Bennett's back that:

"Well, mainly get into some type of work that he can kind of, not necessarily be his own boss, but work at his own pace. Something like the truck work he was doing where he didn't have to do much lifting, bending or stooping, that type of thing. And didn't have

to sit for long periods of time or be in one position for long periods of time, be kind of up and down and sort of a light—moderately light type of work."
R., p. 21.

4. Mr. Bennett had apparently applied for and received social security disability benefits. R., pp. 18 and 40.

conjunction with nonmedical factors, has reduced the claimant's capacity for gainful activity. We agree.

I.C. § 72–425, at the time relevant to this proceeding,[5] provided that the evaluation of permanent disability is "an appraisal of the injured employee's present and probable future *ability to engage in gainful activity* as it is affected by the medical factor of permanent impairment and by nonmedical factors, such as age, sex, education, economic and social environment." (Emphasis added.)

■ After reviewing the Commission's findings of fact and conclusions of law, we find it clear that the Commission did not apply the standard set forth in I.C. § 72–425 in determining that Mr. Bennett was not entitled to a disability award greater than his medical impairment rating. There is no indication that the Commission examined Mr. Bennett's "ability to engage in gainful activity as it is affected ... by nonmedical factors, such as age, sex, education, economic and social environment." The Commission did not examine such factors as that Mr. Bennett was 43 years of age with no formal education or ability to read or write; that Mr. Bennett could not longer engage in construction or farm work; or that his ability to drive trucks was diminished by his accident.

Similarly, in *Lyons v. Industrial Special Indemnity Fund,* 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977), this Court, in holding that the claimant had demonstrated, as a matter of law, that he fell within the "odd-lot" category of those persons whose medical conditions combined with nonmedical factors rendered them virtually unemployable, stated:

"In addition to the medical factor of permanent impairment, the Commission must also consider nonmedical factors such as age, sex, education, economic and social environment, training, and usable skills. I.C. § 72–425. *The Commission's approach in this case does not adequately consider the effect of these nonmedical factors on appellant's ability to obtain employment.* Appellant has a ninth grade education and no special training or skills. His primary vocational asset was his ability to perform heavy manual labor. While his lack of formal education, special training, and usable skills did not prevent him from working in the past, it will undoubtedly lessen his chances of finding employment in the future. At best, appellant can only offer a prospective employer the ability to perform unskilled light work of a highly restricted nature. His position differs from that of someone such as an accountant who would still have valuable skills to offer an employer in spite of a substantial physical handicap." (Emphasis added.)

See *Carey v. Clearwater County Road Department,* (Distribution No. 11, Supreme Court No. 14690); *Gordon v. West,* 103 Idaho 100, 645 P.2d 334 (1982); *Reifsteck v. Lantern Motel and Cafe,* 101 Idaho 699, 619 P.2d 1152 (1980); *Francis v. Amalgamated Sugar Co.,* 98 Idaho 407, 565 P.2d 1364 (1977).

Instead of evaluating Mr. Bennett's disability in terms of his "ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by nonmedical factors," it appears that the Commission merely considered the fact that Mr. Bennett was presently employed as a truck driver; that "his reason for discontinuing his truck driving as an independent truck driver was financial inability to have an engine repaired;" and that "at the time of the hearing, Claimant was in fact working as a truck driver in the state of Texas working 10 hours per day five to five and a half days per week." R., p. 70.

■ The fact that Mr. Bennett was able to continue truck driving does not establish that his ability to engage in gainful activity was not diminished by the nonmedical factors the Commission is required to consider under I.C. § 72–425, *supra.* Additionally, the Commission's reliance on the fact that Mr. Bennett, in an

---

5. I.C. § 72–425 was amended in 1982 subsequent to proceedings herein.

attempt to provide his own means of employment, purchased a truck in order to become an independent truck driver, is misplaced in determining that Mr. Bennett was not entitled to disability compensation additional to his medical impairment rating. In fact, I.C. § 72–425 provides that one of the factors to be considered in determining permanent disability is the "economic circumstances" of the employee. Mr. Bennett lost $4,200 in the six months of his attempt to become an independent truck driver. It is clear that, although Mr. Bennett may have deluded himself into the belief that he was financially able to start his own business—one which would be suited to his physical limitations—as a practical matter, such was not the case.[6] This is an economic factor which tended to show that Mr. Bennett was disabled in excess of his medical impairment, not as a factor negating such an award.

■ The Commission apparently placed considerable reliance on the fact that Mr. Bennett had a temporary job of hauling sand and gravel which required him to work ten hour days, five to five and one-half days a week and paying $4.50 an hour in determining that Mr. Bennett was not entitled to a disability award in excess of his impairment rating. It is true that "the primary purpose of an award of permanent partial disability benefits is to compensate the claimant for his loss of earning capacity or his reduced ability to engage in gainful activity." *Baldner v. Bennett's Chevrolet, Inc.*, 103 Idaho 458, 461, 649 P.2d 1214, 1217 (1982). However, it is error on the part of the Commission to look at one two-week earning period after the claimant's accident and conclude that because the claimant is earning more in this period, if computed on a yearly basis, than he did before his accident that he necessarily did not suffer a loss in his earning capacity or in ability to engage in gainful activity. In *Baldner, supra,* the Commission set the claimant's disability award to reflect the

difference in the amount he earned prior to and after his industrial accident. We upheld the Commission's reliance on the claimant's actual wage earnings in that instance where the referee specifically found that "the claimant's decrease in wage-earning capacity is equivalent to his decrease in ability to engage in gainful activity in this case." Thus, the Commission may rely on Mr. Bennett's pre- and post-injury income levels only if it finds that such accurately reflects his ability to engage in gainful activity. If the Commission finds, as Mr. Bennett testified, that he could not engage in hauling sand and gravel for an extended period of time, then his earnings during such temporary employment do not accurately reflect his ability to engage in gainful employment.

■ Additionally, the Commission erred in stating that "the burden of proof is upon the Claimant to present *expert opinion* concerning the degree of disability." (Emphasis supplied). The Commission's use of this improper standard vitiates its decision and requires this Court to reverse and remand the Commission decision for determination of Mr. Bennett's disability. *See Ross v. Fiest,* 105 Idaho 119, 666 P.2d 646 (1983). As stated in *Baldner, supra,* "In most cases where a claimant is asserting that his permanent disability exceeds his permanent impairment, he attempts to prove that fact by presenting the testimony of a witness who is an expert in the area of employment.... However, the Workmen's Compensation Law *does not require any particular method of proof.*" 103 Idaho at 461, 649 P.2d 1217 (emphasis added); *see Murray v. Hecla Mining Co.,* 98 Idaho 688, 571 P.2d 334 (1977); *see also, Thom v. Callahan,* 97 Idaho 151, 540 P.2d 1330 (1975). Thus, although it is true that the burden of proof is upon the claimant to prove disability in excess of his impairment rating, the claimant is not required to present expert testimony as part of his case.

---

**6.** In fact, Mr. Bennett testified at the hearing that he was presently forced to live in his truck.

R., p. 116.

We reverse and remand to the Commission for a hearing to determine whether Mr. Bennett is entitled to an award of disability in excess of his medical impairment rating. On remand the Commission will consider the nonmedical factors listed in I.C. § 72–425 in determining whether Mr. Bennett has sustained a loss in his ability to engage in gainful activity.

Costs to appellant.

HUNTLEY, J., concurs.

DONALDSON, C.J., concurs in the result.

BAKES, Justice, concurring specially:

I concur in that portion of the majority opinion which concludes that the commission erred in requiring proof by "expert opinion concerning the degree of disability." For this reason the case must be reversed and remanded to the commission for further findings without requiring that the non-medical factors of disability be proved by expert testimony. However, I disagree with the balance of the opinion to the extent that it suggests that the commission did not examine "Mr. Bennett's 'ability to engage in gainful activity as it is affected ... by non-medical factors, such as age, sex, education, economic and social environment.'" There is nothing in the record to indicate other than that the commission considered all of the evidence in arriving at its decision. However, I agree that after having determined the extent of physical impairment, which must be proved by expert medical testimony, the consideration of non-medical factors need not be proved by expert testimony, and for that reason the matter must be remanded to the commission for reconsideration.

SHEPARD, J., concurs.