813 P.2d 873

**Ignacio LOYA,**
**Claimant–Appellant–Cross**
**Respondent,**

v.

**J.R. SIMPLOT COMPANY, Employer,**
**Defendant–Respondent–Cross**
**Appellant.**

No. 18319.

Supreme Court of Idaho,
Boise, November 1990 Term.

June 17, 1991.

Raymundo G. Pena, Rupert, for claimant-appellant-cross respondent.

Hawley, Troxell, Ennis & Hawley, Boise, for defendant-respondent-cross appellant. Joseph D. McCollum, Jr., argued.

BISTLINE, Justice.

Appellant Loya filed an application for hearing with the Industrial Commission seeking workers' compensation benefits resulting from an industrial accident which occurred on March 27, 1986, in the course of his employment at the J.R. Simplot Company (Simplot). On July 12, 1989, the referee prepared findings of fact, conclusions of law, and award, which were approved and adopted by the Commission. Loya appealed the Commission's decision, and Simplot cross-appealed.

Loya suffered his injury when he slipped on the floor at work, falling on his back and tailbone. He was diagnosed and treated by a series of doctors selected by Simplot. These doctors gave Loya a release for light duty with no work restrictions. Loya ultimately returned to work on a part-time basis performing light duty.

On December 5, 1986, Loya transmitted to Simplot a note signed by Dr. Dean Williams stating: "No work for two weeks, then light duty for four weeks." This work release was not acceptable to Simplot because the specialists who had previously seen Loya believed that he could return to regular work. The referee reached the conclusion that Dr. Williams' opinions concerning Loya's inability to work lacked foundation. That conclusion was accepted by the Commission.

When Loya did not continue to work as scheduled by Simplot, he was discharged for unauthorized absences. Loya filed a grievance pursuant to the contract between Simplot and Loya's union and an arbitration hearing was held. The arbitrator reinstated Loya to his former occupation and converted the discharge to a two week suspension without pay or benefits. The arbitrator also ruled that the parties must select a neutral third party health care provider whose ultimate recommendation for Loya's treatment would be binding.

In September of 1987 Simplot agreed to a subsequent examination and report by Dr. James Lansche. Lansche found that Loya had a permanent impairment of 14 percent of the whole person, half of which was due to Loya's accident, and he limited Loya from heavy lifting. Loya returned to work in March 1988, operating a packaging machine, which does not require extremely heavy labor.

The Industrial Commission referee ruled that Simplot was not required to reimburse Loya for medical expenses incurred with Dr. Williams and Dr. Lansche in December 1986. Loya had incurred these expenses without prior notice to Simplot of his need for further treatment. The referee concluded that because Simplot had made adequate medical treatment available to Loya, it was not liable for the additional expenses.

The referee further ruled that Loya was not entitled to income benefits for temporary disability for that period beginning January 5, 1987, and ending March 1988, when he returned to work. The referee concluded that the medical evidence did not establish that Loya was in a period of recovery during this period of time.

Finally, the referee determined Loya's permanent physical impairment attributable to his accident to be 7 percent of the whole person. In establishing disability the referee took into consideration Loya's loss of outside agricultural earnings resulting from the accident. The resulting disability award was 10 percent of the whole person.

This Court's review on appeal from a Commission decision is limited to questions of law, and an ascertainment as to whether the Industrial Commission's factual findings are based on substantial competent evidence. I.C. § 72–732; *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984). The issue presented on Loya's appeal is whether Loya is entitled to temporary total disability benefits from January 5, 1987, through March 1988. The Industrial Commission ruled that Loya was not so entitled because he was not within a period of recovery as required by I.C. § 72–408. The Commission issued a

written decision (prepared and recommended by the referee) which in part stated:

> The medical evidence shows that the claimant had completed a period of recovery and was in a stable condition and able to perform work and that he was in fact working until early December, 1986. Although there is conflicting medical evidence, the Referee finds that the Claimant was not unable to work commencing in January, 1987, and could perform his regular work.... It appears in this case that the Claimant was prevented from returning to work by a discharge by the Employer. Although the Claimant may have other remedies for this problem, we do not believe the remedy is within the Worker's Compensation Law.

R. 21.

Loya contends that he was in fact in a period of recovery as demonstrated by the fact that on December 5, 1987, he had medical permission from his then treating physician, Dr. Williams, for a two week bed rest and partial release for light duty work. Furthermore, Loya points out that he was seen by Dr. Lansche in September 1987, and Dr. Lansche did not release him for return to work during the disputed time period. Dr. Lansche was the physician agreed upon by both parties pursuant to the arbitrator's ruling that they agree on a neutral physician.

The referee found that Dr. William's opinions concerning Loya's inability to work lacked foundation. The referee also summarized the testimony of several doctors who treated Loya at the request of Simplot. The testimony of two of the doctors supported the conclusion that Loya was not in a period of recovery from January 5, 1987, through March 1988. Although the medical evidence is conflicting, the Industrial Commission's finding that Loya was not in a period of recovery from January 5, 1987, through March 1988 is supported by substantial competent evidence. Therefore, we are required to uphold the Commission's finding that Loya is not entitled to temporary total disability benefits.

■ The issue on Simplot's cross-appeal is whether the Industrial Commission erred in including income from Loya's concurrent employments in determining his disability based on pre-injury and post-injury wage earning capacity. The Industrial Commission disposed of this issue as follows:

> Defendant argues that since the Employer had no knowledge of the Claimant's outside earning activities, his earnings from these sources may not be considered in determining his disability. It is true that under Section 72–419(9) the Employer must have knowledge of the concurrent employment in order to consider such earnings in computing the claimant's average weekly wage. However, we do not believe we are so limited when we must consider the Claimant's earning capacity in determining aspects of permanent disability evaluation. A decrease in earning capacity has been found to be an appropriate method of evaluating permanent disability. *Baldner v. Bennett's Inc.*, 103 Idaho 458 [649 P.2d 1214 (1982) ]. We believe it is therefor appropriate to consider the effect of the Claimant's injury on all of his sources of income.

R. 24. We agree with the Commission's interpretation of I.C. § 72–419(9) as applying only to the computation of a claimant's average weekly wage, and not to the evaluation of a claimant's permanent disability under I.C. § 72–425. We therefore uphold the Commission's determination of Loya's lost earning capacity and disability.

■ As to the permanent disability evaluation, the Industrial Commission has not misread our decision in *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982), which upheld the Commission's determination of disability based primarily upon the claimant's reduction in income. *Baldner* did not state, or approve, the computation of disability based solely on loss of wage-earning capacity without consideration of the other non-medical factors set out in I.C. § 72–425, such as "age, sex, education, economic and social environment, training and usable skills." The referee's finding in *Baldner* merely stated

that the "Referee is convinced that both his pre-injury and post-injury wages accurately represent his ability to engage in gainful activity at the time those wages were earned." 103 Idaho at 462, 649 P.2d 1214.

In affirming that finding by the Commission, the Court in *Baldner* stated:

> There is no showing on the record that the decision was made without any consideration of factors other than the mathematical comparison of pre-injury and post-injury incomes. It only indicates that the income comparison result measured Baldner's loss of "ability to engage in gainful activity" accurately regardless, or in spite of, the other factors.

*Baldner* stands for the proposition that the comparison of pre-injury and post-injury incomes is relevant evidence, although not the exclusive method of evaluating the non-medical factors set out in I.C. § 72–425 in arriving at the ultimate determination of permanent disability evaluation.

With this interpretation of *Baldner* in mind, the issue on the cross appeal in this case, then, is whether or not the Commission relied solely upon the claimant's decrease in earning capacity, to the exclusion of the other non-medical factors set out in I.C. § 72–425, in arriving at the claimant's permanent disability. If the Commission had only considered claimant's decrease in earning capacity, we would be required to reverse. While the record is not entirely clear, we are not convinced that, as we stated in *Baldner*, "There is no showing on the record that the decision was made without any consideration of factors other than the mathematical comparison of pre-injury and post-injury incomes." Accordingly, we affirm the Commission in this case.

The rulings of the Commission are in each instance affirmed. Each party having prevailed in part, no costs or attorney fees on appeal are awarded.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.