845 P.2d 1207

**Jeff McCLURG, Claimant–Appellant,**

v.

**YANKE MACHINE SHOP, INC., and Argonaut Northwest Insurance Company, Surety, Defendants–Respondents.**

No. 18970.

Supreme Court of Idaho,
Boise, February 1992 Term.

Jan. 28, 1993.

Cantrill, Skinner, Sullivan & King, Boise, for claimant-appellant. Gardner W. Skinner, Jr., argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents. Glenna M. Christensen, argued.

McDEVITT, Justice.

## BACKGROUND

The claimant, Jeff McClurg ("McClurg"), worked for sixteen years as a painter for Yanke Machine Shop, Inc. ("Yanke"), prior to an industrial accident on the job on June 9, 1987, in which he injured his back. Following surgery and attempts at rehabilitation, it became apparent that McClurg no longer was physically able to perform his job at Yanke. At present, McClurg works as a full-time permanent detention officer at the Ada County Juvenile Services Center ("Center"), resulting from his voluntary enrollment in an on-the-job training program.

McClurg applied for a hearing before the Commission on August 3, 1989, to determine the extent McClurg had suffered a permanent partial disability over and above his permanent physical impairment of six percent (6%) of the whole person. The matter was heard on July 2, 1990. In its

findings of fact, conclusions of law, and order, the Commission found that McClurg had suffered permanent partial disability of thirty percent (30%) of the whole person. The Commission accordingly awarded McClurg permanent partial disability benefits based upon McClurg's salary structure at the time of the accident. McClurg has appealed the decision to this Court. On appeal, we must address the following issues:

I. Whether the Commission considered the proper pre-injury and post-injury wage structure to determine claimant's permanent partial disability benefits.

II. Whether the Commission erred in failing to consider wage increases implemented by Yanke during the interim between claimant's accident and reemployment.

## STANDARD OF REVIEW

■ This Court reviews an appeal from the Industrial Commission under a dual standard. Whereas we apply unlimited review to questions of law, we will not disturb the Commission's factual findings if they are based on substantial competent evidence. I.C. § 72–732; Idaho Const. Art. 5, § 9; *Loya v. J.R. Simplot Co.*, 120 Idaho 62, 813 P.2d 873 (1991); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984). The degree of permanent disability suffered by a claimant is a factual question committed to the particular expertise of the Commission. *Thom v. Callahan*, 97 Idaho 151, 540 P.2d 1330 (1975). Applying this standard, we hold that the Commission based its award on substantial competent evidence, and we affirm.

## I.

The primary purpose of an award of permanent partial disability benefits is to compensate a claimant for his or her loss of earning capacity or reduced ability to engage in gainful activity. I.C. § 72–425 and 72–430; *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982); *Paulson v. Idaho Forest Indust., Inc.*, 99 Idaho 896, 591 P.2d 143 (1979). Idaho Code §§ 72–425 [1] and 72–430 [2] guide the Commission's calculation of a claimant's permanent partial disability. Those sections provide that the computation of permanent disability must be based on a claimant's ability to engage in "gainful activity," not only as it is affected by the medical impairment factor, but also as it is affected by certain nonmedical factors. *Loya*, 120 Idaho at 65, 813 P.2d at 876. The Commission apparently recognized that in this case when it concluded: "[c]laimant has suffered a 30% permanent partial disability when medical and non-medical factors are considered."

■ The Commission cited *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982), to support its comparison of the claimant's earnings before and after his industrial injury as a way of measuring his loss of ability to engage in gainful activity. McClurg argues, however, that *Baldner* authorized the comparison of *annual* earnings, and the Commission instead erroneously compared his *hourly* wages pre-injury and post-injury. As a matter of law, we hold that, although the Commission in *Baldner* utilized pre-injury and post-injury annual earnings, nothing in our decision in that case mandates that the Commission do so rather than looking to hourly wages.

**1.** "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code. I.C. § 72–425.

**2.** Idaho Code § 72–430(1) states:
Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind

likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant....

Nor is the Commission constrained to regard weekly rather than hourly wages, as claimant also contends. The only requirement is that the Commission's comparison of pre-injury and post-injury income levels "accurately reflects [a claimant's] ability to engage in gainful activity." *Bennett v. Clark Hereford Ranch*, 106 Idaho 438, 442, 680 P.2d 539, 543 (1984).

■ The Commission's findings that McClurg generally worked forty-five hours per week and was earning $11.15 per hour at the time of his injury are clearly supported in the record by substantial competent evidence. McClurg personally testified that he worked approximately forty-five hours per week during the summer and less during the winter. Yanke offered no contradictory evidence. Claimant's uncontroverted exhibits also support these findings. The Commission's comparison of McClurg's hourly wages in this case to assist in its determination of his lost earning capacity was entirely proper. The numbers it relied upon to represent the loss of McClurg's earning capacity were supported by substantial competent evidence.

## II.

McClurg's claim that the Commission should have considered wage increases implemented by Yanke during the interim between his injury and subsequent employment at the Center is unsupported by law and too speculative for this Court to embrace. We cannot ascertain whether claimant would have continued working at Yanke, or whether he would have received the same raises the current employees have received. Despite the lack of legal authority in Idaho, claimant ventures into nonjurisdictional case law to reap support for his position. We find claimant's attempts at analogy unpersuasive. This is not a case where injustice has resulted by virtue of a failure to account for intervening wage increases at McClurg's former employment.

The Commission's award of thirty percent (30%) permanent partial disability of the whole person is affirmed.

Costs to respondent.

BAKES, C.J., JOHNSON, J., and REINHARDT, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

My conscience will not allow me to put my approval on any opinion which would sustain the Commission and its referee in this case. Accordingly, it is proper to briefly explain why the *ratio decidendi* of the Commission is wholly unacceptable, not just to me, but to any practitioner who is abreast of current compensation law. In my view, the Commission should have calculated McClurg's permanent partial disability benefits by subtracting his current earnings from what he would have been earning at the machine shop. Such a result would be totally consistent with the Court's decision in *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982).

Claimant's brief in response to surety's contentions succinctly stated:

> There is nothing in *Baldner v. Bennett's, Inc.* that prohibits a comparison of claimant's present actual earnings to what claimant's present earnings would have been in his former employment, had he not been injured.

Claimant added thereto, "Comparison of present earnings is equitable and appropriate because it takes into account the effects of inflation and periodic wage increases."

The referee, in writing the Commission's decision, acknowledged that claimant at the time of the accidental injury was earning $11.15 per hour, and thereafter, following a retraining program, earned only $8 per hour. Conclusion of law IV scoffs at the claimant's contention "that the Commission should consider the wages of two current employees at Yanke Machine Shop, rather than claimant's wage at the time he was injured, in establishing his loss of wage-earning capacity." Unbelievably, the Commission elected to let stand the following specious rationale advanced for it by the referee:

> There is no statutory authority nor case law to support this argument. Such a comparison is entirely speculative since there is no guarantee that Claimant

would have continued working at Yanke, and there is no guarantee that Claimant would have received the same raises the current employees have received.

The single distinguishing feature of the two cases is that in *Baldner* we had an experienced referee who knew the expressed purposes of compensation law, and we had a Commission equally blessed. Neither the then-referee nor the then-Commission would have issued an opinion holding against a worker based on the slender premise that there is no guarantee that a claimant would have continued working where he had worked. In McClurg's case, he had worked for Yanke for sixteen (16) years and over that span of time had been regularly elevated in pay and position to that of lead painter, which in Yanke's operation would be comparable to the head honcho over all other painters. To conclude that someone with sixteen years of satisfactory service to one master would continue to be employed three years later is about as much "speculation" as saying the sun will rise tomorrow. It might not, and McClurg might have quit his job or been fired, but in all likelihood the sun will rise tomorrow and, barring his injury, McClurg would have risen with it to go to work at the machine shop. This one justice, speaking as one of the two surviving members of the Court who were sitting on the *Baldner* case rests assured that Justice Shepard, were he here today, would be the first to take pen in hand to scourge any scoundrel brashly dealing so devilishly with his *Baldner* decision.

In our recent opinion in *Loya v. J.R. Simplot Company,* 120 Idaho 62, 813 P.2d 873 (1991), we stated that

> *Baldner* stands for the proposition that the *comparison of pre-injury and post-injury incomes is relevant evidence, although not the exclusive method of evaluating the non-medical factors set out in I.C. § 72–425 in arriving at the ultimate determination of permanent disability evaluation.*

(Emphasis added.)

*Surety's* post-hearing brief submitted to the referee acknowledged that the Idaho Supreme Court in *Baldner* approved the method of utilizing a comparison of pre- and post-injury earnings, and in the following paragraphs said as to McClurg's claim, "in the absence of testimony as to loss of access to the labor market or other basis for determination of disability, the method utilized in *Baldner* would seem appropriate." R. 18. Notwithstanding that commendable concession, the referee's written decision declared as a virtual pronouncement that claimant's attempt to utilize the present wages to two employees at Yanke to establish what a non-injured McClurg would have made, but for the industrial accident injury, was entirely speculative. The referee sought to bolster her pronouncement: "First of all, such a comparison is entirely speculative since there is no guarantee that the claimant would have continued working at Yanke...." R. 19. The third link in the pronouncement followed almost immediately: "There is no provision for speculation in determining lost wages." That statement is then in turn supposedly supported by the surety's assertion that:

> The Supreme Court, in affirming the comparisons utilized by the Industrial Commission in *Baldner v. Bennett's, Inc.,* did not *condone* the use of speculation but affirmed the use of a preexisting salary, i.e., one which was actually earned, for comparison with postinjury income.

(Emphasis added).

The decision of the referee, in turn adopted by the Commission, if left to stand, is a very serious inroad on an innovative legal precedent carefully thought out by Justice Shepard. Moreover, one must keep in mind that this is not a tort case seeking damage for alleged negligence. Jeff McClurg had only one avenue of relief after incurring disabling injuries while in the employ of Yanke Machine Company. The Idaho legislature had wisely constructed the statutory framework for a system insuring that there would be "sure and certain relief for workmen and their families

and their dependents ... regardless of questions of fault." I.C. § 72–201. That noble promise cannot long persist if the Court fails to demand of the sureties and the Commission that statutory provisions be adhered to, and, equally important, that the Commission is not free to ignore precedential case law announced by the Supreme Court.

Process and procedure under the Workmen's Compensation Act are designed to be a summary and simple as is reasonably possible. I.C. § 72–708. As this Court has held many times, *the Act is to be construed liberally in favor of a claimant. The humane purposes which it seeks to serve leave no room for narrow, technical construction.*

*Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977) (emphasis added).

No merit is discernible in the argument which the surety advanced to the referee, and to which the referee and the Commission blindly succumbed. What clearly appears is that claimant McClurg was no less a dedicated employee of Yanke than Baldner a dedicated employee of Bennett's, Inc. McClurg's history parallels Baldner's. On being struck by the adversity of industrial injury which deprived both of a livelihood, and accepting such misfortune without lament, each began training which has taken him forward into new careers. Neither was content to be a kennel hound.

Today, over ten years later, the majority upholds the Commission in McClurg's case. But not one of them has pointed to any distinction which can be drawn, other than the referee's tom-foolery in McClurg's case evidenced by making nonsensical statements such as, "there is no guarantee that the claimant would have continued working at Yanke." Perhaps one of the affirming foursome will step boldly forward with a reasoned enlightenment of the referee's remarkable rationale by which the Industrial Commission deprived McClurg of his right to be accorded equal treatment in light of *Baldner.*