17 P.3d 874

**Betty R. THOMPSON, Claimant–Appellant,**

v.

**MOTEL 6, Employer, and National Union Fire Insurance Company of Pittsburgh, Surety, Defendants, and State of Idaho, Industrial Special Indemnity Fund, Defendant–Respondent.**

No. 26111.

Supreme Court of Idaho,
Twin Falls, November 2000 Term.

Jan. 23, 2001.

**374**

Emil F. Pike, Jr., Twin Falls, for appellant.

Hon. Alan G. Lance, Attorney General, Boise; Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for respondent. Thomas B. High, argued.

KIDWELL, Justice.

Claimant Betty Thompson appeals from an order of the Industrial Commission finding that she had not attained odd-lot status, and that her permanent partial disability was only 70%, rather than the 100% she claimed. The decision of the Industrial Commission is affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Claimant Thompson was raised on a farm and graduated from high school in Ontario, Oregon. She married at the age of 15. At the age of 67, she has spent her entire adult life performing manual labor. Thompson's employment history includes, working as a nurses' aid in a nursing home, as a custodian, a motel and kitchen maid, a potato inspector and packager, a bean sorter, and as a tomato canner.

During 1981, Thompson saw Dr. A.C. Emery for irregular heart palpitations. He diagnosed her as having peri-ischemial atrial tachycardia, and prescribed medication. Thompson has taken medication for her heart since that time.

Thompson injured her back in September of 1987 while employed by Holiday Inn. She again saw Dr. Emery who referred her to Dr. Retmier. He determined that she had suffered a thoracic vertebral compression fracture at T7. Thompson was thereafter permanently restricted from sweeping, mopping or lifting over 40 lbs. The Commission determined that Thompson had not always observed those restrictions. Following her accident, Thompson worked as a bean sorter for several different companies.

The Commission found that between her 1987 accident and 1993, Thompson "worked regularly as a bean sorter, potato sorter, nurses' aide, [and] garden shop assistant," to supplement her Social Security income. At the time of the hearing, Thompson was receiving $366 a month from Social Security. She testified that because of her employment earnings she had to repay Social Security $1,500.

On August 6, 1995, while working for Motel 6, Thompson was injured when she pulled on a mattress. She felt a snap, which was followed by a sudden pain in the middle of her back. After finishing work that day, Thompson went to see Dr. Emery, who referred her to Dr. Michael T. Phillips, an orthopedic physician in Twin Falls. Dr. Phillips diagnosed her with a T6 fracture and an aggravation of her previous T7 injury. Thompson was released to return to light-duty work in November 1995.

Thompson returned to sorting beans between December of 1995, and February 16, 1996. During this time, she experienced back pain which was treated with Tylenol and one-half of a prescription pain pill, hyrocodone, two or more times a day.

Throughout 1996, Thompson worked for Express Services doing bean sorting and potato inspecting for various companies. During this time, she would take a Tylenol and one half of a prescription pain pill each shift to control her back pain. Her employment ended with Express Services when the beans were finished.

Thompson worked for Personnel Plus sorting beans from April 2, 1997, until the sorting was completed in July of 1997. Subsequently, she worked as a ticket taker at the fair where she was allowed to stand or sit at her discretion. Thompson continued to work light-duty jobs until October of 1997, when she told a job placement supervisor at Personnel Plus that her lawyer had advised her against working anymore. However, the Commission later determined that Thompson "quit her temporary jobs more likely because she was approaching her maximum allowable earnings for continued receipt of Social Security benefits."

In October of 1997, Thompson again saw Dr. Phillips. This time Dr. Phillips diagnosed a new hairline compression fracture, and warned Thompson that because of the severity of her osteoporosis, and because her vertebrae were so fragile, she could suffer another vertebral compression just by turning over in bed.

Thompson filed her initial worker's compensation complaint on October 12, 1995.

This complaint was against Motel 6 (employer) and National Union Fire Ins. Co. of Pittsburgh (surety). This complaint was dismissed without prejudice, by stipulation of the parties on January 30, 1996. On January 14, 1997, Thompson filed an amended workers' compensation complaint. This time, in addition to the above defendants, Thompson included a claim against the Industrial Special Indemnity Fund (ISIF).

Industrial Commission Referee Alan Taylor held a hearing on the matter and on November 5, 1999, the Industrial Commission entered its findings of fact, conclusions of law and order. In its decision, the Industrial Commission determined that Thompson had suffered a "permanent impairment of 19% of the whole person due to her 1987 T7 compression fracture and osteoporosis."

The Commission then determined that Thompson had failed to prove that she was permanently disabled under the odd-lot doctrine. This conclusion was based on the Commission's determination that: (1) Thompson had successfully attempted work following her injury, (2) that Thompson had "actually found and performed work since her accident," and (3) that even though Thompson testified as to experiencing pain during employment, her ability to work was not due to superhuman strength. Based on these findings, the Commission held that the ISIF was not liable for any apportioned share of Thompson's injury.

The Commission, however, did find that considering "Claimant's age, physical restrictions, transferable skills, education, job market area, and pre-existing impairments," Thompson had suffered a "permanent partial disability inclusive of impairment [of] 70%," of which 20% was apportioned to her employer.

On December 16, 1999, Thompson filed her notice of appeal. In her appeal, Thompson only takes issue with that part of the order finding that she was not totally permanently disabled. Thus, the ISIF is the only respondent to this appeal.

## II.

### STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises

free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson,* 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson ),* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

■■■ The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to reweigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.,* 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

## III.

## ANALYSIS

**A. The Industrial Commission's Determination That Thompson Failed To Establish Odd Lot Status And That She Was 70% Permanently Disabled Is Supported By Substantial And Competent Evidence.**

Thompson claims that the Industrial Commission erred in determining that she was not totally and permanently disabled. She asserts that she established a *prima facie* case of total disability under the odd-lot doctrine.

■■■ There are at least two ways that a claimant may prove a permanent disability. "First, a claimant may prove a total and permanent disability if his or her medical impairment together with the nonmedical factors total 100%." *Boley v. State, Indus. Special Indem. Fund,* 130 Idaho 278, 281, 939 P.2d 854, 857 (1997). The other way of establishing a total and permanent disability is under the odd-lot doctrine. *Id.* The odd-lot doctrine is available to a claimant who has failed to establish a 100% disability. *Id.* "The odd-lot category exists for those per-

sons who are so injured as to be unable to perform services other than 'those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.' " *Id.*

■■■ It is well accepted Idaho law that an employee must first make a prima facia showing of entitlement to odd-lot status. Then the burden shifts to the employer to rebut the presumption.

■■■ An employee may prove a prima facie case of odd-lot status in at least one of three ways. First, "by showing that [the claimant] has attempted other types of employment without success;" second, "by showing that [the claimant] or vocational counselors or employment agencies on his or her behalf have searched for other work and other work is not available;" or third, "by showing that any efforts to find suitable employment would be futile." *Boley,* 130 Idaho at 281, 939 P.2d at 857. A prima facie case of odd-lot status can only be established if "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Id.* (internal quotations omitted). However, where the extent of the disability is in dispute, the determination of "whether the claimant is of "odd-lot" status is a factual determination within the discretion of the Commission." *Id.*

■■■ Here the claimant, according to the Commission's findings, has failed to make a prima facie showing, thus the burden does not shift to the employer.

This Court will uphold a determination of the Industrial Commission where the findings are supported by substantial and competent evidence. *Id.* at 280, 939 P.2d at 856. This Court "will not disturb the Commission's conclusions on the weight and credibility of the evidence on appeal unless they are clearly erroneous." *Id.*

In the present case, Thompson claims that the Commission erred in finding that she was not 100% permanently disabled, and that it further erred in finding that she had not established odd-lot status.

Claimant first contends that she established that she was 100% disabled, because

she established through her testimony and that of Ms. Blakely, a co-worker, that she could not perform her work as a bean sorter without enduring substantial pain. The Commission determined that Thompson had suffered a permanent partial disability of 70%. In making this determination, the Commission had before it the testimony of Thompson, Ms. Blakely and several physicians.

The record shows that the Commission heard Thompson testify that she could not perform her work without substantial pain. Thompson stated that she was taking one-half of a prescription pain pill and a Tylenol each shift. However, it is important to note that, sitting as the finder of fact, the Commission determined that Thompson's statements were not "entirely credible." This finding, while perhaps debatable, is within the statutory authority granted to the Industrial Commission.

On the other hand, the Commission found Ms. Blakely to be a credible witness. Ms. Blakely testified that while working with Thompson, she noticed that Thompson "was in excruciating pain. I noticed her taking more pain medication than I felt as a professional nurse [was] necessary.... I saw a person that was not being able to complete the job the way that we were hired to do."

Additionally, several of the physicians who examined Thompson testified as to her limited ability to work. Dr. J. Gerald McManus testified after examining Thompson's medical records that:

> I think that anything with vigorous activity for this lady is probably on the border because she's at risk doing nothing. In saying that, I'm not denying that she was able to sort the beans, and she may have been able to do more than that, but as a general precaution, I think that it's, you know, she has to be very careful.

Dr. Eric H. Widell stated in a letter that after examining Thompson, he believed "this lady is incapable of any gainful employment at this point in time and will be so at least until she realizes some significant gains in strength of her lumbar stabilizers and her thoracic paraspinals."

Additionally, Dr. Michael T. Phillips testified, "activities much above the sedentary level would, I believe, in her case, put her at a very significant chance for refracture."

Thus, the Commission had before it medical testimony of the degree of the limitations on her ability to work. This testimony, together with that of Thompson and Blakely provided substantial and competent evidence upon which the Industrial Commission could rely. Thompson asserts however, that the percentage should have been higher because of the pain she was suffering. However, while the Commission took her pain into consideration, it also found that she was able to work and that she only left her employment when the bean seasons were through. This evidence, together with the testimony of the witnesses, provides substantial and competent evidence to support the Commission's determination. Therefore, we affirm the Industrial Commission's determination that Thompson had suffered a 70% permanent partial disability.

It is important to note that we are not suggesting that Thompson should have been required to work in the face of significant and constant pain. We do not hold that an employee must continue working while enduring pain. Rather, we leave it to the Industrial Commission, as the finder of facts, to ascertain whether a person's discomfort is enough to interfere with their work. Each such determination will have to be made upon the particular facts of each case. Here, the record provides evidence that Thompson's discomfort was not at a level which prohibited her from working. As indicated above, there was evidence before the Commission that Thompson continued her employment until the end of the bean season, rather than terminating her employment when the pain increased.

■ Next, Thompson claims that she has established odd-lot status. Specifically she disagrees with the Commission's conclusion that she "had attempted work successfully." On appeal, Thompson argues that she should have been granted odd-lot status because she was unable to perform her customary type of work as a bean picker or potato specker without substantial pain.

In support of her position, Thompson cites *Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 565 P.2d 1364 (1977), for the proposition that odd-lot status can be obtained where the claimant is unable to perform work without substantial pain. *Id.* at 409, 565 P.2d at 1366. In that case, the claimant was held to have established odd-lot status because, due to his industrial injury, he was not able to perform his previous work, nor was he able to perform any of the tasks he had attempted because of "pain in his lower back and legs after prolonged sitting." *Id.*

However, unlike the claimant in *Francis,* here the record indicates, and the Commission found, that Thompson could perform other work. The Commission found that after Thompson was released to return to work in November 1995, she was employed as a bean sorter. She held this position from December 1995 until February 16, 1996. Later in 1996, Thompson worked for Express Services "regularly throughout the year." While the Commission found that she took medication for pain during this time, she did not quit working until the beans were done. Thompson again sorted beans from April 2, 1997 to July 1997. Again this job ended when the bean-processing was accomplished. Additionally, Thompson worked as a ticket taker at the fair and "in various light-duty capacities until October of 1997."

These facts, as found by the Commission, demonstrate that Thompson has failed to establish that she was unsuccessful in attempting other types of employment following her injury. Thompson testified to each of these periods of employment, and has not challenged the findings on appeal. Therefore, there is substantial and competent evidence to support the Commission's conclusion that Thompson "attempted work successfully."

Thompson also suggests that the Commission erred in its holding as to the second manner of proving odd-lot status. The second method of proving odd-lot status is to show that "[claimant] or vocational counselors or employment agencies on his or her behalf have searched for other work and other work is not available." *Boley,* 130 Idaho at 281, 939 P.2d at 857. Thompson points out the finding of the Commission that "Vocational expert James Spooner testified on behalf of claimant that she was not competitively employable in the Twin Falls labor market."

However, the Commission specifically found that this testimony was "not persuasive in light of the fact that Claimant found and performed work since her accident." As noted above, Thompson testified that she had performed work since her 1995 accident. We hold, there is substantial and competent evidence to support the conclusion of the Commission that Thompson failed to establish odd-lot status. The record indicates that she was able to find and perform work following her industrial accident. The decision of the Industrial Commission is affirmed.

## B. The ISIF Is Not Entitled To Attorney Fees On Appeal.

The ISIF claims attorney fees on appeal because Thompson's appeal simply asked this Court to reweigh the evidence. However, while this point is arguable, the ISIF does not cite to any case law or statute for an award of fees. Therefore, this Court will not award attorney fees on appeal because the ISIF failed to properly support its claim. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking.").

## IV.

## CONCLUSION

The decision of the Industrial Commission is supported by substantial and competent evidence, and accordingly, we affirm. No attorney fees are awarded on appeal. Costs to respondent.

Chief Justice TROUT, Justices SCHROEDER and WALTERS, and Justice Pro Tem McKEE concur.