38 P.3d 617

**Laurie Ann JARVIS, Claimant–Appellant,**

v.

**REXBURG NURSING CENTER, Non–Insured Employer, Defendant–Respondent.**

No. 27185.

Supreme Court of Idaho,
Rexburg, September 2001 Term.

Dec. 26, 2001.

Dalling & Dalling, Idaho Falls, for appellant.

Respondent Rexburg Nursing Center did not participate in this appeal.

EISMANN, Justice.

Laurie Jarvis (Jarvis) appeals from orders of the Industrial Commission following a hearing regarding her permanent disability rating. We affirm the findings and order of the Commission.

## I. FACTS AND PROCEDURAL HISTORY

Jarvis was employed as a janitor by the Rexburg Nursing Center in Rexburg, Idaho. On January 2, 1989, she injured her back while mopping the dining room floor. She finished her shift and went home. The following morning she went to work, but could not perform her duties because of the pain. She reported her injury to her employer, who referred her to a local physician. He prescribed conservative treatment and subsequently referred her to an orthopedic surgeon in Idaho Falls.

After a period of conservative treatment, on March 20, 1989, the orthopedic surgeon performed surgical laminectomies and discectomies on Jarvis' back at the L5–S1 and L4–L5 levels. The surgery did not relieve her complaints of pain.

Before her surgery Jarvis had filed an application for a hearing with the Industrial Commission. The employer did not file an answer, and on May 17, 1990, the Commission granted Jarvis' motion to enter default against the employer.

The hearing was held on August 14, 1990. Because of the default entered against the employer, it did not participate in the hearing. The referee found that Jarvis had not reached medical stability and that from the date of her accident she had been totally and temporarily disabled from performing her work. Jarvis' orthopedic surgeon recommended that she attend a pain clinic to help her manage her current level of pain and that she then have further surgery. The referee found that Jarvis had not yet reached maximal medical rehabilitation, but that if she did not attend the pain clinic and receive the further surgery, she would probably be totally and permanently disabled. The Industrial Commission adopted the referee's findings of fact and ordered that Jarvis receive total temporary disability income benefits, payment for her medical bills, future medical benefits that included attendance at a pain clinic and the further surgery recommended by her orthopedic surgeon, and continuing total temporary disability benefits until she received the recommended medical treatment and reached medical stability. The Industrial Commission also awarded her attorney fees under Idaho Code § 72–327 because her employer did not have worker's compensation insurance. The Commission retained jurisdiction to resolve any further issues including those relating to medical benefits, permanent physical impairment, and permanent disability.

On March 13, 1995, Jarvis requested a hearing to establish her permanent benefits. She and the employer then entered into settlement negotiations, and no further action was taken. On December 31, 1998, the Industrial Commission gave notice of its intent to dismiss the proceedings for lack of prosecution. Jarvis requested that the case be retained, and the Commission retained the case on its active calendar.

The hearing to determine Jarvis' permanent benefits was held on April 19, 2000. Because default had been entered against the employer, it again was not allowed to participate in the hearing. The primary issue was the extent of Jarvis' continued pain and her resulting limitations.

The referee found that Jarvis had become dependent upon narcotic medication and that when her treating physicians indicated an intention to discontinue her narcotics, she changed physicians. The psychiatrist who treated Jarvis from July 1991 through August 1998 opined that Jarvis' only chance to return to work was attending an inpatient pain clinic and tapering off her narcotic medications. Jarvis refused several requests that she attend a pain clinic, the primary goal of which would be the discontinuance of her medications. She also failed to cooperate with referrals and other recommended treatments.

When results were within Jarvis' control, clinical testing on examination produced abnormalities, but many tests conflicted with each other and with anatomical reality. A functional capacity evaluation conducted by a physical therapist showed results that were either invalid or below the first percentile. He attributed these results to Jarvis' lack of

effort. The referee found that Jarvis was not credible regarding her abilities.

The referee found that Jarvis was medically stable as of March 13, 1995, and recommended that she be awarded total temporary disability benefits to that date. He recommended that the prior order regarding Jarvis' total temporary disability benefits be superseded because she failed to cooperate with her doctors' recommendations. He also found that Jarvis had a permanent impairment of 46% and a permanent disability of 70% as compared to the whole person. The referee found that Jarvis had failed to prove that she was disabled under the odd-lot doctrine. Finally, the referee recommended that Jarvis not receive pain medications after December 21, 2000, unless she successfully completes inpatient treatment for her drug dependence and remains free of pain medications.

The Industrial Commission adopted the findings and recommendations of the referee and entered an order in conformity with them. Jarvis requested that the Commission reconsider several portions of the order, but it denied that request. Jarvis then appealed.

## II. STANDARD OF REVIEW

When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact. *Id.*

## III. ISSUES ON APPEAL

1. Did the Industrial Commission err in holding that the Claimant had failed to prove that she was totally and permanently disabled?

2. Did the Industrial Commission err in conditioning Claimant's entitlement to future pain medication and future medical benefits upon her attending a pain clinic or inpatient program by December 21, 2000?

3. Did the Industrial Commission err in failing to award total temporary disability benefits to the Claimant for the period from April 1990 until October 12, 2000?

4. Did the Industrial Commission err in failing to retain jurisdiction?

5. Did the Industrial Commission err in failing to liquidate Claimant's future benefits?

## IV. ANALYSIS

**A. Did the Industrial Commission err in holding that the Claimant had failed to prove that she was totally and permanently disabled?**

Jarvis does not contest the Commission's findings that she is medically stable and that she has a permanent impairment of 46% of the whole person. She contends, however, that the Commission erred when it failed to find that she was totally and permanently disabled.

A claimant may prove a total and permanent disability in one of two ways. First, the claimant can prove that his permanent impairment together with nonmedical factors totals 100%. *Thompson v. Motel 6*, 135 Idaho 373, 17 P.3d 874 (2001). A permanent disability rating is an appraisal of the claimant's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000); IDAHO CODE § 72–425 (1999). The pertinent nonmedical factors include the nature of the physical disablement, the cumulative effect of multiple injuries, the occupa-

tion of the employee, his age at the time of accident, his diminished ability to compete in an open labor market within a reasonable geographical area, the personal and economic circumstances of the employee, and other factors as the Commission may deem relevant. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000); IDAHO CODE § 72–430 (1999).

▮▮▮ If a claimant fails to establish a 100% disability, he can seek to prove that he is totally and permanently disabled under the odd-lot doctrine. *Thompson v. Motel 6*, 135 Idaho 373, 17 P.3d 874 (2001). The odd-lot category is for those workers who are so injured that they can perform no services other than those that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). Such workers need not be physically unable to perform any work at all. *Id.* They are simply not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part. *Id.* If the evidence of the medical and nonmedical factors places a claimant prima facie in the odd-lot category, the burden is then on the employer or surety to show that some kind of suitable work is regularly and continuously available to the claimant. *Id.* A claimant can establish a prima facie case for odd-lot status by showing: (1) that he or she had attempted other types of employment without success; or (2) that he or she, or vocational counselors or employment agencies on his or her behalf, have searched for other work and other work is not available; or (3) that any efforts to find suitable employment would be futile. *Dehlbom v. Industrial Special Indem. Fund*, 129 Idaho 579, 930 P.2d 1021 (1997).

Jarvis attempted to prove that her permanent disability was 100% or, in the alternative, that she was totally and permanently disabled under the odd lot doctrine because any efforts to find suitable employment would be futile. She relied primarily upon her and her mother's testimony regarding the nature and severity of her chronic pain

and her resulting irritability, inability to concentrate, depression, sleeplessness, fatigue, and loss of function in sitting, standing, walking, bending, and driving and upon the expert opinion of a private rehabilitation counselor.

▮▮▮ The claimant's credibility is certainly an issue that can be considered by the Commission, particularly where the claimant is basing a claim for permanent disability upon complaints of pain. *Soto v. J.R. Simplot*, 126 Idaho 536, 887 P.2d 1043 (1994). The Commission found that Jarvis was not credible. It found that the physical therapist who attempted to evaluate her functional capacity was unable to rate her because she failed to try to perform the tests and that her representations about her abilities were not credible. It also found that her medical history over ten years showed a similar lack of effort and incredible complaints on examinations. The Commission discounted the testimony of Jarvis' expert because his opinions were based upon the truthfulness of what Jarvis had told him concerning her pain, limitations, and abilities. The Commission therefore concluded that Jarvis' evidence was not convincing, that she had failed to prove a permanent disability of 100%, and that she had failed to prove a prima facie case under the odd-lot doctrine. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000). The Commission's findings are not clearly erroneous.

**B. Did the Industrial Commission err in conditioning Claimant's entitlement to future pain medication and future medical benefits upon her attending a pain clinic or inpatient program by December 21, 2000?**

During the course of her treatment, Jarvis became dependent upon narcotic medications. Medical professionals stated that she needed to discontinue those pain medications, and her psychiatrist opined that an inpatient pain clinic was her only chance to return to work. Jarvis decided not to attend a pain clinic, however. The Industrial Com-

mission found that future medical care would be unreasonable if Jarvis fails to follow recommendations of her medical providers. It awarded her $10,000 in future medical care to pay for inpatient treatment and then ordered that she could not receive reasonable medical benefits after December 31, 2000, unless she successfully completed inpatient treatment for her drug dependence and remained free of pain medications.

On December 29, 2000, Jarvis filed a motion seeking an extension of time within which to attend the inpatient treatment. In support of that motion, her counsel submitted his affidavit in which he stated that the employer had not made any voluntary payments to Jarvis since 1995, and that Jarvis had not received any payments through garnishment proceedings instituted against the employer since June 1998. He stated that he had contacted several pain clinics in the area and that they required either payment as treatment was provided or a guarantee of payment in order to attend. The employer, a limited partnership, is owned by various entities located in the state of Ohio and is no longer doing business in the state of Idaho. He also stated that Jarvis currently had a case pending in Madison County, Idaho, against the employer and its owners, that he estimated it would take four to six months to obtain a judgment, and that Jarvis would then have to attempt to enforce the judgment in Ohio. The Commission denied Jarvis' request for an extension of time.

In denying the request for an extension of time, the Commission stated that it had ordered the employer, not Jarvis, to pay for the inpatient treatment, that she was only required to enroll in the treatment facility, and that if the treatment provider required any payment up front and the employer failed or refused to pay, she could request an extension of the deadline.

Jarvis has not raised any objection to attending the inpatient treatment other than her inability to pay for that treatment. In its order, as clarified when denying the requested extension, the Commission did not require Jarvis to pay or incur personal liability for the inpatient treatment. It only required her to actually take whatever steps she could to enroll in that treatment. If the treatment provider will not provide its services upon the credit of the employer, or if, in that case, the employer does not pay for the treatment, then Jarvis could request an extension. We will not presume that the Commission will deny a requested extension under circumstances where Jarvis was unable to obtain the inpatient treatment because of the employer's refusal to pay. Jarvis has not shown that the Commission abused its discretion in imposing this requirement.

Jarvis also argues that the Commission erred in conditioning her future medical benefits upon her remaining free of pain medications. Relying upon *Sprague v. Caldwell Transportation, Inc.,* 116 Idaho 720, 779 P.2d 395 (1989), Jarvis argues that the necessity of her receiving pain medications in the future is a decision left exclusively to her treating physicians. If her physician prescribes the narcotics, she should be permitted to take them.

Idaho Code § 72–432(1) provides, "The employer shall provide for an injured employee such reasonable ... medicines ... as may be reasonably required by the employee's physician ... immediately after an injury ..., and for a reasonable time thereafter." In *Sprague* this Court held that the statute requires the employer to pay the costs of reasonable medical treatment required by the claimant's physician where three circumstances are present: (1) the claimant made gradual improvement from the treatment received; (2) the treatment was required by the claimant's physician; and (3) the treatment received was within the physician's standard of practice and the charges for the treatment were fair, reasonable, and similar to charges in the same profession. *Hipwell v. Challenger Pallet and Supply,* 124 Idaho 294, 859 P.2d 330 (1993).

In this case, Jarvis abused narcotic medications for years. Her medical records were replete with recommendations that she terminate her narcotic drug use and that she not use narcotic medications in the future. When her treating physicians became concerned about her narcotic abuse and indicated an intention to discontinue prescribing the drug, she would leave and begin treatment

with another physician .[1] There was ample medical evidence showing that her continued use of narcotic pain medications was detrimental to her recovery.

The Commission found that it would not be reasonable for her to continue taking these narcotic medications. Considering her history of substance abuse, that finding is certainly supported by the evidence. There is no evidence that her continued use of the prescription painkillers would cause her condition to improve. Rather, the evidence was to the contrary. Under the circumstances in this case, the Commission did not err in requiring that Jarvis discontinue using prescription pain medications.

## C. Did the Industrial Commission err in failing to award total temporary disability benefits to the Claimant for the period from April 1990 until October 12, 2000?

The Commission found that Jarvis was medically stable as of March 13, 1995, and it awarded her total temporary disability benefits to that date. Jarvis argues that she should have been awarded total temporary disability benefits to October 12, 2000, the date of the Commission's order approving and adopting the referee's proposed findings of fact and conclusions of law. She does not contest the Commission's finding of medical stability.

 Total temporary benefits are only awarded during the period of recovery. IDAHO CODE § 72–408 (1999). Once a claimant is medically stable, he is no longer in the period of recovery, and the total temporary benefits cease. *Loya v. J.R. Simplot*

*Co.*, 120 Idaho 62, 813 P.2d 873 (1991); *Harrison v. Osco Drug, Inc.*, 116 Idaho 470, 776 P.2d 1189 (1989); *Paulson v. Idaho Forest Indus., Inc.*, 99 Idaho 896, 591 P.2d 143 (1979). Jarvis does not contest the Commission's finding regarding medical stability, and therefore the Commission did not err in terminating Jarvis' total temporary benefits as of the date of medical stability, which was March 13, 1995.

## D. Did the Industrial Commission err in failing to retain jurisdiction?

 Jarvis contends that the Industrial Commission erred in refusing to retain jurisdiction. She argues that it should be required to retain jurisdiction so that it can monitor her future medical treatment. In *Reynolds v. Browning Ferris Indus.*, 113 Idaho 965, 969–70, 751 P.2d 113, 117–18 (1988), we stated:

Although it was entirely appropriate for the Commission to retain jurisdiction of Reynolds' case, there is also another possible approach the Commission may appropriately utilize in order to determine his permanent partial disability rating. The authority for this alternative approach is found in I.C. § 72 425:

**Permanent disability evaluation.—** "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's *present and probable future ability to engage in gainful activity* as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code. (Emphasis added).

Under I.C. § 72–425, the Commission can presently make an award for permanent

---

1. She argues that the Commission's finding that she changed doctors to get pain medication is unfounded. A review of her medical records shows otherwise. Jarvis began seeing Dr. Setter, an orthopedic surgeon, on January 13, 1989. His records show that he became increasingly concerned about her dependency on pain medication. On January 17, 1992, Dr. Setter told Jarvis that he did not feel comfortable continuing to prescribe narcotic pain medication for her. His chart notes indicate that he had tried previously without success to terminate her narcotic pain medication. On January 23, 1992, he met with her again and told her that he "was not going to continue to feed her habit" and that he

would not prescribe any more of the narcotic medication for her. Jarvis' next, and last, contact with Dr. Setter's office was a telephone call on April 6, 1993, in which she stated that she wanted her x-rays and that she was going to see another doctor, whom she refused to identify. In 1998 and 1999 Dr. Packer treated Jarvis. On October 23, 1999, he told her that he wanted to slowly discontinue her narcotics and that he would refill the prescription for that month only. She responded that she did not agree to discontinuing the narcotics and that she would find another physician to refill her narcotics. That was her last contact with Dr. Packer.

disability based upon the injured employee's "present and probable future ability to engage in gainful activity." The Commission may thus estimate a claimant's probable future disability and reduce it to present value for the purpose of making a final award which takes into account probable future changes in impairment. Thus, when the Commission estimates what the claimant's future disability might be, it will in a sense be functioning much like any jury or trier-of-fact in a personal injury action.

Jarvis has not argued that her condition is progressive, nor has she argued that the Commission failed to take into account factors that may impact her probable future ability to engage in gainful activity. Although Jarvis may disagree with the Commission's conclusions regarding the extent of her disability, she has not shown that the Commission abused its discretion in failing to retain jurisdiction.

### E. Did the Industrial Commission err in failing to liquidate Claimant's future benefits?

Finally, Jarvis argues that the Industrial Commission erred in failing to exercise its authority under Idaho Code § 72–404 to calculate a lump sum payment for all future benefits she is entitled to receive. She states that because the employer was not insured and is not voluntarily making the required payments, she must obtain her benefits by securing a judgment against the employer and then executing upon its assets. Jarvis submits that it would be beneficial to her to be able to collect all of her benefits through one judgment and writ of execution rather than through multiple judgments and writs of execution.

The Commission may award a lump sum award of benefits when, in its discretion, doing so would be in the best interest of all parties. Jarvis has not shown that the Commission abused its discretion in failing to do so in this case.

### V. CONCLUSION

We affirm the order of the Industrial Commission.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL, CONCUR.