133 P.3d 1226

**V.J. MAGEE, Claimant–Appellant,**

v.

**THOMPSON CREEK MINING COMPANY, Employer, and Ace Fire Underwriters Insurance Company, Surety, Defendants–Respondents.**

**No. 31509.**

Supreme Court of Idaho,
Boise, March 2006 Term.

March 20, 2006.

Rehearing Denied May 9, 2006.

Emil F. Pike, Jr., Twin Falls, for appellant. Emil F. Pike argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for respondents. Glenna M. Christensen argued.

JONES, Justice.

V.J. Magee appeals the Industrial Commission's decision rejecting his claim for (1) a total and permanent disability rating, (2) classification as an odd lot worker, and (3) continued coverage for certain medical treatments. We affirm.

### I.

At the time of the hearing, Magee was 53 years old. He resided in Raidersburg, a small Montana mining town. Magee has an eighth grade education, no GED, and limited vocational training. His primary occupation has been that of a heavy laborer, performing jobs such as millwright, miner, and oil field worker. Magee has also driven trucks. In 1983, Magee was injured while working in an oil field. It took approximately three years of recovery before he returned to heavy work.

In May 2000, Magee was employed by Thompson Creek at its mine near Clayton, Idaho, as a millwright. Because of this job, Magee had a temporary home in Clayton. On May 6, while walking up a set of steps, Magee either slipped or mis-stepped. This caused him to fall on his leg on the landing. Magee believed he pulled a muscle in his right hip so he finished his work day. After his shift ended, Magee went to his Clayton home and went to bed. A few hours later, he awoke with pain down his right leg. Magee was subsequently transported by ambulance to the hospital. At the hospital, Magee was diagnosed with acute low back pain with sciatica. He was kept overnight because of problems with adequately treating his pain. Magee's wife subsequently came and took him back to their home in Raidersburg.

Several days later, Magee contacted his family physician, Dr. Curt G. Kurtz, and went to Dr. Kurtz's home for treatment. Magee remained at Dr. Kurtz's home for several days until he was stable enough to return to his home. Dr. Kurtz then administered a lengthy course of treatment "for an acute low back strain, a stretched sciatic nerve and SI joint disruption." This treatment regimen included Colchicine IV and trigger-point injections and Prolo therapy and involved approximately 88 weekly or bi-weekly visits over a course of more than three years. Dr. Kurtz explained that Colchicine was an "old anti-inflammatory" that reduces the swelling in nerves and tissue. However, the FDA has only approved Colchicine for the treatment of acute gout. Dr. Kurtz described Prolo therapy as

> an old treatment … that dates back about 150 years where [it was believed] that if you injected an irritant into a tendon or a joint or a ligament or a muscle that the irritation would cause the memory of the cells that created the muscle to come forward, the memory would open up, you take a look around, clean out the junk and actually build a new ligament, tendon, muscle, joint lining, et.cetera.

In September 2000, Magee returned to Thompson Creek, where he performed parts inventory in the warehouse. Thompson Creek did not intend for this position to become permanent. After a period of one to five days [1] working in this position, Magee did not return and Dr. Kurtz faxed Thompson Creek a letter stating that Magee's condition prevented him from working at that time. Since then Magee has not worked for Thompson Creek. In 2001, Magee worked as a highway flagger for four or five months. Magee testified that he quit this job because he was taking around 100 pain pills on a four-

---

1. The Commission did not make a finding on the number of days Magee worked. Magee testified that he worked for 4–5 days but a Thompson Creek manager testified that Magee only worked one day.

day job and he feared that the pain medication would cause him to injure himself on the job.[2]

In May 2001, Dr. Michael Sousa, an orthopedic surgeon, and Dr. Henry Gary, a neurosurgeon, performed an independent medical evaluation of Magee. These doctors assessed Magee as having a permanent partial impairment rating of 10%. They explained that Magee had two options for treatment: to continue with Dr. Kurtz's conservative care, including stretching and non-steroidal anti-inflammatories, or to have surgery. However, they did not recommend surgery at that time. Additionally, Drs. Sousa and Gary stated that Dr. Kurtz's use of Colchicine was a controversial, off-label usage of the medication and that it appeared to be a palliative, rather than curative, measure. Finally, they opined that Magee's prognosis for full recovery was fair to poor and that Magee was capable of performing work in the sedentary to light category.

In June 2001, Dr. Kurtz reviewed and responded to Drs. Sousa and Gary's opinion. He agreed with everything except Drs. Sousa and Gary's permanent partial impairment rating of 10% and their opinion on the use of Colchicine. Dr. Kurtz assigned Magee a permanent partial impairment rating of 28% and explained that while his use of Colchicine was off-label, it resulted in progress in Magee's condition without causing side effects. While Dr. Kurtz agreed with Magee's capability to perform sedentary to light work at that time, it appears that he later changed his mind. Dr. Kurtz subsequently opined that Magee could not work because of his chronic pain, swelling of his lower back, and the unpredictability as to whether he could drive on any given day.

In December 2002, Magee filed a complaint requesting worker's compensation benefits and compensation for medical expenses. After the October 2004 hearing, the referee found that Magee suffered a work related injury, was entitled to a permanent partial impairment rating of 10% and a permanent partial disability rating of 20%, without apportionment, and was entitled to reimbursement for medical expenses incurred. However, the referee determined that Magee was not entitled to continuing medical care. The Commission affirmed and adopted the referee's findings of fact and conclusions of law. Magee filed a motion for reconsideration, requesting that the Commission grant him continuing medical care. The Commission denied reconsideration because it found that its initial decision was supported by the record. This appeal followed.

## II.

This Court exercises free review of the Industrial Commission's legal conclusions. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004) (citations omitted). The Commission's factual findings will be upheld if they are supported by substantial and competent evidence. I.C. § 72-732; *Snyder v. Burl C. Lange, Inc.*, 109 Idaho 167, 169, 706 P.2d 56, 58 (1985) (citations omitted).

In the current case, we address whether the Industrial Commission erred in finding that Magee was not totally and permanently disabled and whether the Industrial Commission erred in denying Magee continuing medical care.

## III.

Magee argues that the Commission erred in failing to find him totally and permanently disabled. Magee claims in particular that the Commission should have classified him as an odd-lot worker. Magee is incorrect.

Whether a claimant is totally and permanently disabled is a question of fact. *Boley v. State*, 130 Idaho 278, 280, 939 P.2d 854, 856 (1997). There are two ways in which a claimant can establish a total and permanent disability: (1) by proving that his or her medical impairment and non-medical factors caused him or her to become 100% disabled; or (2) by proving that he or she is

---

2. Magee testified that, after taking numerous pain pills in one day, he "step[ped] out" and almost got hit by a truck.

an odd-lot employee. *Id.* at 281, 939 P.2d at 857.

## A.

■ In determining whether the claimant has met his burden of proving 100% disability, the Commission will consider various factors, including the nature of the injury, the claimant's age at the time of the accident, his occupation, his education level, and his ability to work. I.C. § 72–430. The primary focus when evaluating such a permanent disability is the effect these factors have on the claimant's "present and probable future ability to engage in gainful employment." I.C. § 72–425; *Jarvis v. Rexburg Nursing Ctr.,* 136 Idaho 579, 583, 38 P.3d 617, 621 (2001) (citations omitted).

In the current case, the Commission, after considering the above factors, as well as other relevant factors, found that Magee incurred a permanent partial disability of 20% of the whole person, inclusive of his 10% permanent impairment rating. In making its decision, the Commission focused on the evidence concerning Magee's ability to engage in gainful employment. The Commission noted that while Magee would not be able to return to his previous occupation as a millwright or any other labor-intensive position, he could perform sedentary or light jobs. Magee, however, failed to produce evidence regarding the availability (or unavailability) of such jobs. The Commission's conclusions were not clearly erroneous. Therefore, there was substantial and competent evidence to support the Commission's finding that Magee sustained a 20% permanent partial disability.

## B.

■ A claimant falls within the odd-lot category if he or she was so injured that he or she can only perform services which are "so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist." *Jarvis,* 136 Idaho at 584, 38 P.3d at 622. The claimant proves odd-lot status by showing that: (1) he or she "attempted other types of employment without success;" (2) "he or she, or vocational counselors or employment agencies on his or her behalf, ... searched for other work and oth-

er work [was] not available;" or (3) "any efforts to find suitable employment would be futile." *Id.* A prima facie case of odd-lot status is only established if "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Thompson v. Motel 6,* 135 Idaho 373, 376, 17 P.3d 874, 877 (2001) (quotations omitted). Once the claimant proves odd-lot status, the burden shifts to the employer to prove that regular and continuous suitable work is available to the claimant. *Id.*

■ In the current case, Magee argues that he is unemployable and the Commission erred in finding that any further efforts by Magee to find employment would not be futile. Magee is incorrect. Because there is a dispute concerning the type of work which Magee could perform, "whether [Magee] is of odd-lot status is a factual determination within the discretion of the Commission." *Boley,* 130 Idaho at 281, 939 P.2d at 857. Dr. Kurtz testified that Magee was unemployable due to his chronic pain. Drs. Gary and Sousa, on the other hand, testified that Magee could perform light or sedentary work. It was not clearly erroneous for the Commission to find the testimony of Dr. Kurtz unpersuasive.

Next, the Commission found that the record contained insufficient evidence regarding the employability of Magee. First, the Commission found Magee did not sufficiently attempt to acquire employment. Since his injury, Magee attempted to perform parts inventory in late 2000 and attempted a position as a flagger in 2001. With a note from Dr. Kurtz, Magee quit the first position after one to five days because he was not yet ready to return to work (his injury was four months prior to this job). Magee then voluntarily quit his flagging job after four or five months because he claimed that his pain medication created unsafe working conditions. The Commission found Magee's reasoning regarding his employability unpersuasive for two reasons: (1) no physician opined that Magee was unable to perform his flagging position or any similar work and (2) Magee did not attempt to find or perform any other type of work since his 2001 flag-

ging job. The Commission did not err in disregarding Magee's argument.

Next, the Commission found that there was insufficient evidence to find that there was no light or sedentary work available. The Commission observed that no vocational consultants were involved in the case. Further, Magee did not try to find appropriate work nor did he register with a job service or request vocational assistance in searching for work. Consequently, the record is silent as to the availability of light or sedentary jobs within Magee's labor market and the Commission did not err in finding that Magee failed to meet the criteria of the second prong of the odd-lot worker test.

Finally, the Commission found that there was insufficient evidence to support the contention that any effort by Magee to locate employment would be futile. As explained above, Magee did not exhaust his remedies in finding appropriate work. Instead, the Commission found that Magee had a "seeming lack of motivation to return to any type of work." As a result, the Commission did not err in finding that Magee failed to provide sufficient evidence to establish that it would be futile to search for light or sedentary work in Magee's job market.

### C.

Magee claims the Commission erred in assigning a permanent partial disability rating of only 20%. However, this rating was supported by substantial evidence, including the testimony of Drs. Sousa and Gary. The Court will not second guess the Commission on this issue.

### IV.

■■■■■ An employer must provide an injured employee with reasonable medical care for a reasonable time after a work-related injury. I.C. § 72–432(1). Therefore, an employee is entitled to continuing medical care when such care is reasonable and prescribed by a physician. Such medical care is reasonable when: "(1) the claimant made gradual

improvement from the treatment received; (2) the treatment was required by the claimant's physician; and (3) the treatment received was within the physician's standard of practice and the charges for the treatment were fair, reasonable, and similar to charges in the same profession." *Jarvis*, 136 Idaho at 585, 38 P.3d at 623 (citations omitted).

Magee argues that he is entitled to receive continuing medical care, including further pain medication. It is not necessary for us to fully address this issue. In its order, the Commission did not specifically address further medical care or pain medication; rather, the Commission addressed whether further Colchicine injections and Prolo therapy were reasonable. It found that they were not. While the language in the Commission's order is broader than warranted by the record, it is fairly clear that the Commission was just addressing the lack of continuing necessity for these treatments. As Magee conceded during oral argument, there was substantial evidence to support the Commission's finding that Colchicine injections and Prolo therapy were no longer necessary. This Court need not address the reasonableness of other future medical care.[3]

### V.

We affirm the Commission's conclusions that Magee has 20% permanent disability, that he was not totally and permanently disabled, that he did not fall within the odd-lot category, and that he is not entitled to payment for further Colchicine injections or Prolo therapy. No costs or attorney fees.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.

---

**3.** Both parties acknowledged at oral argument that Thompson Creek is voluntarily paying for

medical care, including pain medication.