## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 45415

| | |
|---|---|
| ELFEGO MARQUEZ, | ) |
| | ) |
| Claimant-Respondent, | ) |
| | ) Boise, May 2018 Term |
| v. | ) |
| | ) Filed: August 3, 2018 |
| PIERCE PAINTING, INC., Employer, and | ) |
| STATE INSURANCE FUND, Surety, | ) Karel A. Lehrman, Clerk |
| | ) |
| Defendants-Appellants. | ) |
| | ) |
| _____ | ) |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Commission is <u>reversed</u> and this case is <u>remanded</u> for further proceedings consistent with this Opinion.

Cantrill Skinner Lewis Casey & Sorensen, LLP, Boise, for appellants. Clinton O. Casey argued.

Racine Olson Nye & Budge, Chartered, Pocatello, and Middleton Law, PLLC, Middleton, for respondent. James C. Arnold argued.

_____

BEVAN, Justice.

Elfego Marquez ("Marquez") sustained an impairment from an industrial accident while employed at Pierce Painting, Inc. ("Pierce Painting"). Marquez subsequently filed a workers' compensation complaint. Pierce Painting through its surety, the State Insurance Fund ("SIF"), paid Marquez's medical bills, total temporary disability benefits, and permanent partial impairment benefits. SIF did not pay Marquez's permanent disability benefits, claiming that Marquez was not eligible for permanent disability due to his status as an undocumented immigrant. The Industrial Commission (the "Commission") disagreed and ordered that Marquez was entitled to pursue a claim for permanent disability without reference to his status as an undocumented immigrant. Pierce Painting and SIF appeal the order of the Commission. We reverse.

1

# I. FACTS AND PROCEDURE

Marquez was born in 1970 and is a citizen of Mexico. He received a university degree in Mexico where he became a teacher and taught first and third year elementary school for seven years. In approximately 2000, Marquez illegally immigrated from Mexico to the United States. After entering the United States, Marquez went to southern California, where he purchased a social security card and used it to obtain employment washing dishes at a restaurant. After working in California for approximately seven months, Marquez moved to Emmett, Idaho and soon after began working at Pierce Painting. Marquez's primary job at Pierce Painting was to prepare buildings to be painted. He was able to work at Pierce Painting by providing the social security card he purchased in California. Pierce Painting knew Marquez was an undocumented immigrant and that his social security card was not legally issued to him. Not long after beginning at Pierce Painting, a supervisor received a notice of garnishment associated with the social security number used by Marquez. Evidently, the individual to whom the social security number had been legally issued had an outstanding child support delinquency. The supervisor instructed Marquez to obtain a different social security card. Marquez complied by illegally obtaining a different social security card.

On May 20, 2010, Marquez sustained an impairment from an industrial accident while preparing a building to be painted. Marquez was standing on two five gallon buckets stacked on top of each other to reach an area above a tall doorway when he fell onto a concrete floor fracturing his right wrist and injuring his right arm and shoulder. His right wrist was put into a cast and he eventually underwent multiple right shoulder surgeries performed by Dr. Hassinger. Dr. Hassinger rated Marquez's right shoulder impairment at 5% of the whole person. He recommended permanent restrictions on overhead activities and that Marquez not return to his position at Pierce Painting.

In July of 2010, Marquez was referred to the Industrial Commission Rehabilitation Division ("ICRD") by SIF. ICRD consultant Ken Halcomb ("Halcomb") was assigned to Marquez's case. ICRD's primary objective was to preserve Marquez's time-of-injury job and to return him to that job following his recovery. This required Halcomb to meet with an agent of Pierce Painting, and then with Marquez. Halcomb interviewed Marquez about his education, past work history, and transferable job skills. Notably, the interview did not include questions about Marquez's immigration status. When it became evident that Marquez would not be able to return to his time-of-injury job, Halcomb assisted Marquez in identifying other potential employment opportunities consistent with his restrictions and within his geographic area. Ultimately Halcomb closed

Marquez's file without placing him with another employer. Halcomb never learned that Marquez was an undocumented immigrant. Marquez was then referred to the Idaho Department of Labor for additional placement services.

Marquez received substantial benefits under the Workers' Compensation Act for his injuries. SIF paid $87,526.64 for medical bills, $30,985.87 for total temporary disability benefits, and $8,487.60 for permanent partial impairment benefits. Marquez then sought permanent disability benefits in excess of his impairment because his post-accident medical restrictions excluded him from a significant portion of the undocumented immigrant labor market in Idaho. SIF refused to pay Marquez any permanent disability benefits because of his status as an undocumented immigrant.

On April 14, 2015, Marquez filed a workers' compensation complaint against Pierce Painting and SIF ("the appellants") seeking permanent disability benefits in excess of his impairment. On May 1, 2015, Marquez filed an amended workers' compensation complaint. The appellants filed answers to both Marquez's original and amended complaints denying that Marquez was entitled to any permanent disability benefits. On July 28, 2016, the parties stipulated to the following:

1. Marquez is not legally in the United States.
2. Marquez had no legal access to the Idaho or United States labor market.
3. Marquez sustained an industrial injury on May 20, 2010.
4. Marquez injured his right wrist and right shoulder in the industrial accident on May 20, 2010.
5. The appellants have paid Marquez's medical bills and permanent partial impairment in full.
6. The only dispute is whether Marquez is entitled to permanent disability in excess of his impairment.

On July 28, 2016, a hearing was held before a Referee. The sole issue presented at the hearing was whether Marquez was entitled to permanent disability benefits. Marquez was a witness at the hearing and spoke through an interpreter. Halcomb also testified before the Referee. He noted that since it is the purpose of the ICRD to return injured workers to their time-of-injury job, or failing that, to some other suitable job in their geographic area, it is ICRD policy that such placement services cannot be offered to undocumented workers. Halcomb further acknowledged that there is a labor market for undocumented workers in the Treasure Valley; however, he was unable to characterize the size and components of that labor market. Halcomb did confirm that Marquez's

3

access to the labor market is limited because of both his undocumented immigration status and the permanent effects of his work injury.

On May 1, 2017, the Referee issued his written recommendation. The Referee found Marquez's undocumented immigration status precluded him from receiving permanent disability benefits. In doing so, the Referee relied upon two prior cases from the Commission that supported his conclusion. *See Otero v. Briggs Roofing Company*, 2011 WL 4429193 (Idaho Ind. Com.); and *Diaz v. Franklin Building Supply*, 2009 WL 5850572 (Idaho Ind. Com.). Both of these proceedings held that an undocumented immigrant's status is a pertinent nonmedical factor that precludes the claimant from receiving any permanent disability benefits.

On July 10, 2017, the Commission issued its written findings of fact and conclusions of law. The Commission disagreed with the Referee's recommendation and found that Marquez was entitled to "the full measure of 'permanent disability' guaranteed by the Idaho Worker's Compensation law . . . ." In so ruling, the Commission determined that "the most appropriate way to measure permanent disability based on a loss of earning capacity per Idaho Code §72-425 and Idaho Code §72-430 is to evaluate disability without reference to such injured worker's immigration status." The Commission thus found that both *Otero* and *Diaz* were "wrongly decided." On July 28, 2017, the appellants filed a motion for reconsideration. On August 25, 2017, the Commission denied the motion for reconsideration. On October 6, 2017, the appellants filed a notice of appeal to this Court.

## II. STANDARD OF REVIEW

The standard of review for an appeal from the Commission is two-fold: "The Commission's factual findings are subject to a clear error standard, and will be upheld if supported by competent and substantial evidence construed most favorably to the party who prevailed below. However, this Court exercises free review over the Commission's conclusions of law." *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 335–36, 870 P.2d 1292, 1294–95 (1994) (quotations and citations omitted).

This Court liberally construes Idaho's workers' compensation statutes in favor of finding compensation for employees:

> When interpreting the Act, we must liberally construe its provisions in favor of the employee in order to serve the humane purpose for which it was promulgated. The Act is designed to provide sure and certain relief for injured workers and their families and dependents. The primary objective of an award of permanent disability benefits is to compensate the claimant for his or her loss of earning capacity.

*Wernecke v. St. Maries Joint Sch. Dist. No. 401*, 147 Idaho 277, 282, 207 P.3d 1008, 1013 (2009)

(citations omitted). "[D]oubtful cases should be resolved in favor of compensation[;] . . . the humane purposes which these acts seek to serve leave no room for narrow technical construction." *Smith v. Univ. of Idaho*, 67 Idaho 22, 26, 170 P.2d 404, 406 (1946).

## III. ANALYSIS

### A. The Commission erred in finding Marquez could pursue a permanent disability claim without reference to his status as an undocumented immigrant.

At the outset we state the obvious to those trying to implement Idaho's Workers' Compensation Act (the "Act") for undocumented immigrants.[1] Notwithstanding the philosophical considerations and potential legal entanglements which permeate this case, the Idaho Legislature made the policy decision over twenty years ago that those unlawfully employed are entitled to benefits under the Act. As the governing statute clearly states: "A person, including a minor, *whether lawfully or unlawfully employed . . .*" shall constitute an employee who is entitled to coverage and benefits under the Act. I.C. § 72-204 (emphasis added). Moreover, Idaho Code section 72-212, which lists those whose employment is exempt from the Act, does not include undocumented workers. In fact, Idaho's Legislature amended section 72-212 in 1996 and specifically deleted the agricultural pursuits exemption which had exempted agricultural employers from coverage under the Act since its original adoption in 1971. Consequently, the Legislature granted coverage to agricultural workers, a great number of whom are illegal employees. *See* 1996 Idaho Sess. Laws 609. The Legislature thus affirmed workers' compensation coverage for "unlawfully employed" workers under the Act. I.C. § 72-204.

Notably, neither party disagrees that undocumented immigrants are entitled to medical benefits and compensation due to an impairment arising from an industrial accident. The narrow issue presented in this appeal is whether an undocumented worker can be granted a claim for permanent disability benefits under the Act without the Commission taking account of his status as

---

[1]We identify Marquez's status in the United States as an "undocumented immigrant" because that is the term by which he was identified by the Industrial Commission and by the parties to this case. Other courts have chosen to refer to such individuals under the designation of "illegal alien," although this term carries a pejorative tone in some circles. *See Lozano v. City of Hazleton*, 620 F.3d 170, 176 n.1 (3d Cir. 2010), *cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011). Under federal law, any non-U.S. citizen is considered an alien. 8 U.S.C. § 1101(a)(3). Aliens who have entered the United States without permission, or who have violated the terms of their admission, are identified under the law as illegal aliens. Nevertheless, we will utilize the term "undocumented immigrant" because that term was used by the parties and the Commission in its underlying Findings of Fact and Conclusions of Law.

an undocumented immigrant. Thus, the question before us comes down to one of statutory interpretation. In that regard, Idaho law provides:

> Where a statute is clear and unambiguous, the expressed intent of the [L]egislature shall be given effect without engaging in statutory construction. The literal words of a statute are the best guide to determining legislative intent. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations. Statutory language is not ambiguous merely because the parties present differing interpretations to the court. Rather, statutory language is ambiguous where reasonable minds might differ or be uncertain as to its meaning.

*City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, ___, 416 P.3d 951, 954 (2018) (internal quotations and citation omitted). In a case analyzing provisions of the Act, we observed the following:

> A construing court's primary duty is to give effect to the legislative intent and purpose underlying a statute. Moreover, the court must construe a statute as a whole, and consider all sections of applicable statutes together to determine the intent of the [L]egislature. It is incumbent upon the court to give the statute an interpretation that will not deprive it of its potency. In construing a statute, not only must we examine the literal wording of the statute, but we also must study the statute in harmony with its objective.

*Davaz*, 125 Idaho at 336–37, 870 P.2d at 1295–96 (citations omitted). Thus, we review the Act according to its plain meaning, while not losing sight of its "potency." *Id*.

The plain language of the Act establishes that unlawfully employed persons are entitled to workers' compensation coverage. There is no dispute about that conclusion; however, coupling that tenet with the permanent disability sections of the Act shows that the Commission erred in this case.

Under the Act a permanent disability occurs "when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72-423. The evaluation of a permanent disability is defined as an "appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors [as] provided in section 72-430, Idaho Code." I.C. § 72-425. The following factors *shall* be considered in the evaluation of permanent disability:

> In determining percentages of permanent disabilities, account *shall* be taken of the nature of the physical disablement, the disfigurement if of a kind likely to limit the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing

6

the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area *considering all the personal and economic circumstances of the employee*, and other factors as the commission may deem relevant. . . .

I.C. § 72-430 (emphasis added). Accordingly, "the test for determining whether a claimant has suffered a permanent disability [in excess of] permanent impairment is whether the physical impairment, taken in conjunction with *non-medical factors*, has reduced the claimant's capacity for gainful activity." *Graybill v. Swift & Company*, 115 Idaho 293, 294, 766 P.2d 763, 764 (1988) (emphasis added) (internal quotation marks omitted). "It is a claimant who must bear the burden of proof in establishing that she [or he] is disabled in excess of impairment." *McCabe v. Jo Ann Stores, Inc.*, 145 Idaho 91, 96, 175 P.3d 780, 785 (2007).

In this case, the Commission found that Marquez's status as an undocumented immigrant was not a pertinent nonmedical factor in evaluating his claim for permanent disability under Idaho Code sections 72–425 and 72-430. In doing so, the Commission ignored the plain wording of section 72-430, which requires that "all the personal and economic circumstances of the employee" be considered. This clearly includes a claimant's personal and economic status as an undocumented immigrant. In addition, the plain language of section 72-425 states that the evaluation of permanent disability includes the appraisal of the "pertinent nonmedical factors [as] provided in section 72-430, Idaho Code." Thus, the Commission must consider all personal circumstances that diminish the ability of the claimant to compete in an open labor market. *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994) (citing I.C. § 72–430(1)); *See also Bennett v. Clark Hereford Ranch*, 106 Idaho 438, 680 P.2d 539 (1984).

In *Bennett*, this Court held that the Commission misapplied section 72-425. This was because the Commission failed to consider several personal circumstances that diminished the claimant's ability to compete in an open labor market:

> After reviewing the Commission's findings of fact and conclusions of law, we find it clear that the Commission did not apply the standard set forth in I.C. § 72-425 in determining that Mr. Bennett was not entitled to a disability award [in excess of] his medical impairment rating. There is no indication that the Commission examined Mr. Bennett's "ability to engage in gainful activity as it is affected . . . by nonmedical factors, such as age, sex, education, economic and social environment." The Commission did not examine such factors as that Mr. Bennett was 43 years of age with no formal education or ability to read or write; that Mr. Bennett could not [sic] longer engage in construction or farm work; or that his ability to drive trucks was

7

diminished by his accident.

106 Idaho at 441, 680 P.2d at 542; *see also Lyons v. Indus. Special Indem. Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977) ("The Commission's approach in this case does not adequately consider the effect of these nonmedical factors on appellant's ability to obtain employment."). These cases establish that the Commission's task must be broad-based and far-reaching, considering the entire landscape of a claimant's economic and social history. Such history must include the claimant's immigration status when he or she is undocumented.

During oral argument both parties seemed to acknowledge that the outcome reached by this Opinion is congruent with the Act's meaning and purpose. The parties also intimated that this Court should provide guidance for the Commission on remand relative to the factors which must be considered in determining questions of permanent disability under the Act. We decline to do so, leaving the Commission to fulfill its mandate as a fact-finder in making these determinations. We do note, however, that just as creating a legal construction that ignores a claimant's immigration status in making a permanent disability finding is erroneous, so too is the position taken in *Otero* and *Diaz* that such a condition is an absolute bar to such an award. Again, the Legislature has provided that all employees, lawfully or unlawfully employed, are entitled to the full panoply of benefits under the Act. As such, a claimant must be free to state his case and attempt to meet his burden in establishing his claim. The employer is also free to counter that argument, but without an outright proscription of the employee's right to claim benefits simply because he or she is an undocumented worker. In this respect, the employer and the Commission must recognize the fact that a labor market does exist for undocumented workers in this state.[2]

Certainly this result may pose difficulty for both parties on remand; however, this is not a predicament of the Court's making. The Act provides that unlawfully employed workers have coverage for their claims; Marquez has been paid over $127,000 thus far; the Commission is simply mandated to follow what Idaho law requires, which is to consider "all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant" in making its determination. I.C. § 72-430. This Court will not address the specific weight of a claimant's undocumented immigration status in evaluating a claim for permanent disability, nor will we

---

[2] We recognize that the rehabilitative purposes of the Act, and in particular the functions of the ICRD cannot square with assisting a disabled worker to find other work when that worker is undocumented. Assisting an undocumented worker in obtaining further illegal work could violate federal law. This is not a reality without a remedy, however, where the Legislature, should it choose, take whatever action it deems necessary to remedy this situation.

prejudge whether Marquez is entitled to receive permanent disability in excess of impairment in this case. That determination is contingent upon the unique set of facts yet-to-be-presented to the Commission in light of our ruling in this case.

We recognize that the hiring of undocumented immigrants is a crime under federal immigration laws—and we do not condone the violation of these laws. However, "[t]he power invested to this Court is limited to interpretation of the constitution and laws and their application to the factual situations presented by the cases that come before the Court. . . . The power to make law and declare public policy is vested with the [L]egislature." *Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 825, 41 P.3d 242, 253 (2001). If the Idaho Legislature desired to create an absolute bar for permanent disability for those "unlawfully employed" within the Act, it was free to do so when it amended the Act and removed the agricultural pursuits exemption in 1996 or thereafter. Moreover, if the Legislature wanted to prohibit undocumented immigrants from receiving a benefit under the workers' compensation statutes, it could have created an express prohibition in that regard—just like it did regarding unemployment benefits. *See* I.C. §§ 72-102(1), 72-1366(19)(a). For now, the Legislature has explicitly included those "unlawfully employed" in the Act and failed to exclude undocumented immigrants as exempt within Idaho's workers' compensation statutes. Given the plain language of sections 72-204 and 72-212 and the liberal interpretation afforded to workers' compensation statutes in favor of compensation, we decline to hold that a claimant's undocumented immigration status alone is an absolute bar to the receipt of permanent disability benefits. Instead, we hold that a claimant's undocumented immigration status is a pertinent nonmedical factor that must be weighed on a case-by-case basis in evaluating his or her claim for permanent disability.

## IV. CONCLUSION

We reverse the order of the Commission and remand this case for further proceedings consistent with this Opinion. Costs to Marquez.

Chief Justice BURDICK, Justices HORTON and BRODY, CONCUR.


SCHROEDER, J. *pro tem*, concurring in part and dissenting in part:

I concur in that part of the Opinion that reverses the Commission decision that "the most appropriate way to measure permanent disability based on a loss of earning capacity per Idaho Code Section 72-425 and Idaho Code Section 72-430 is to evaluate disability without reference

9

to such injured worker's immigration status." Clearly his status as a person in this country illegally is a pertinent non-medical factor.

I dissent from that portion of the Opinion which remands the case for a further hearing and determines that *Otero* and *Diaz* were erroneously decided. This case should conclude the proceedings with a determination that Mr. Marquez is not entitled to permanent benefits. Part 2 of the stipulated facts states: "Marquez had no legal access to the Idaho or United States labor market." That stipulation should end the case. Without dispute, the only way he could establish a right to the future benefits sought would be to prove that he could violate the law, e.g. steal still another person's identity, and obtain employment from a complicit employer who would also violate the law, as his last employer has done. He has obtained the Worker's Compensation benefits to which he is entitled and which the legislation made available to him – in the area of $127,000.00. That's where this case should stop.

Calling Mr. Marquez an "undocumented immigrant" glosses over the reality that he is in the country illegally and has obtained employment through the artifice of stealing the identity of another or two other people. He has purchased the social security number of a real person and used it without regard to the adverse consequences that might fall on that person. His employer has been complicit in this conduct, telling him to get another social security number when the fact was exposed that he had stolen the identity of another person by use of that person's social security number. This record does not show what consequences the victim (victims) may have or will suffer from the identity theft. It takes little imagination to picture IRS and debtor/creditor difficulties. In this mix his employer has benefitted by knowingly employing the illegal worker while likely competing with other businesses that may follow the law. On this record any determination of a future employment market must depend on the Commission and ultimately this Court accepting the continuing cycle of illegal conduct by the employee and often the employer. The Commission should not, and certainly this Court should not, make a decision accepting illegal conduct as a basis for an award of future benefits. Mr. Marquez has received the benefits the Legislature could reasonably expect him to receive. But the door should close based on the stipulation he "had no legal access to the Idaho United States labor market." The prior Commission decisions in *Otero* and *Diaz* got it right.

10